## WILLIAM C. CARTER v. STATE.

No. A-2140.   Opinion Filed January —, 1916.

(154 Pac. 337.)

1.  **DYING DECLARATION—Predicate—Evidence.**  Proof that the
deceased died within four hours after he was shot; that his wounds
were necessarily fatal, that he stated when he was shot ''he has
killed me,'' and that he expressed no hope of recovery, sufficiently
shows that the deceased was conscious of impending death, and is,
in itself a sufficient predicate for the admission of a written
statement made by the deceased shortly after he was shot,
purporting to be his dying declaration.

2.  **ADMONITIONS TO JURY—Absence of Defendant.**  The fact
that the trial judge went to the court room where the jury
were deliberating and cautioned the bailiffs against permitting
the jury to separate, and the jury that they should speak to nobody
either concerning the case or on any other subject, and that they
must keep themselves together as a body of jurors, and not
communicate to the outside world, except through their bailiffs
or by permission of the court. That this was in the absence of the
defendant and his counsel and was not in open court, is no
ground for a reversal where it affirmatively appears that the
judge did not speak about the case, and that it was not discussed
or referred to by him.

*Appeal from District Court, Okmulgee County;
Wade S. Standfield, Judge.*

William C. Carter, convicted of manslaughter in the first
degree, appeals.   Affirmed.

*Crump, Crump & Garrett* and *Eaton & Cowley,* for plaintiff
in error.

*Chas. West,* Atty. Gen., and *C. J. Davenport,* Asst. Atty. Gen.,
for the State.

DOYLE, P. J.   William C. Carter, plaintiff in error was
informed against for the crime of murder, alleged to have been
committed by killing A. Leavitt, by shooting him with a pistol.
Upon his trial the jury returned a verdict finding him guilty of
manslaughter in the first degree and assessing his punishment at

imprisonment in the penitentiary for the term of four years. From the judgment rendered upon the verdict he appeals.

The evidence shows that A. Leavitt, the deceased was engaged in the mercantile business in the town of Henryetta. On the day of the homicide, the defendant, accompanied by a friend went into the store of the deceased about seven o'clock in the morning for the purpose of buying a pair of shoes. He selected a pair of shoes, price four dollars, but which the clerk in the store with the consent of the deceased agreed to sell for three dollars. He put the shoes on, gave the clerk a ten dollar bill in payment and received the change. He then decided that he did not want the shoes. The clerk or the deceased then returned to him three dollars. The defendant left the store and went to his boarding place. Between twelve and one o'clock that day he returned to the store armed with a 32 caliber Smith & Wesson revolver. The deceased was alone in his store at the time.

One witness for the state, George Morey, testified that he was standing across the street from the defendant's place of business, and that he heard the first shot and looked across the street and the deceased was several feet in front of the defendant coming towards the front door when the second shot was fired. That he stepped inside of a stairway and heard two more shots fired. The evidence further shows, that as the defendant and the deceased came out of the front door of the store the deceased was in front of the defendant. The defendant had the pistol, but the deceased held the muzzle. As they came out the deceased fell on his knees. The defendant then flourished the gun around and struck the deceased and turned and walked away. The deceased hollowed "There he is, catch him, he has killed me."

Dr. Moony testified that he was called to attend the deceased and found four gun shot wounds on his body; one entered below the sternum and passed through the liver directly towards the spine; this was a fatal wound; one in the right leg above the knee and one in the palm of the hand. The deceased asked him how bad he was hurt, and he told him he had a fatal wound; and suggested that the defendant better make a statement if he had

any to make. The deceased then made a sworn statement which omitting situs and verification is as follows:

"A. Leavitt, being first duly sworn according to law states upon oath that on July 15th, 1912, a man came into his store during the morning and bought a pair of shoes. He brought them back and he gave back to him his money. He said that I short-changed him and he then shot me. Nothing further was said or done by me to provoke him. I make this statement fully realizing that I am dangerously wounded and with the expectation that death will ensue from the wounds I now have."

He then stated to Dr. Mooney that he wanted him to take him to a hospital for the purpose of having an operation regardless of what his condition was. He was then taken on a special train to Muskogee, where he died at four o'clock that afternoon while undergoing an operation.

The defendant testifying in his own behalf, stated substantially as follows:

That he had $10.85 when he went into Leavitt's store; that he afterwards spent $3.50 for a pair of shoes; $0.20 at a drug store; $0.20 at a pool hall and $0.10 for drinks and at noon he paid for his board $5.50, making $9.50. On paying his board he discovered that he had only $0.35 left; that after figuring the amount paid he decided that Leavitt the deceased had lacked one dollar of returning the proper change. That he started to go to work. His hours being from 12:30 P. M. to 12:30 A. M. It was raining and he went to his room to get his coat; that his pistol was in his coat pocket. That on his way to work he stopped at the store and Mr. Leavitt was the only person there. That he said to him, "I have stopped by and I wish to tell you that you made a mistake in my change this morning of one dollar." And he said, "Why didn't you call my attention to it then." That the deceased was behind the counter near the cash register and the defendant was outside. The deceased said, "You don't mean to accuse me of stealing a dollar," and the defendant answered, "No sir, I would not accuse any one of stealing a dollar," and the deceased reached over from behind the counter and commenced to choke

him, saying: "I will have you arrested." That as he tried to get the pistol out of his pocket it went off and from that time on it was a running fight, "And I shot him, I guess I shot him, I would not say whether I did or not. It was just simply a running fight."

In rebuttal the state proved by two witnesses that the defendant was immediately arrested and he then had $1.35, a silver dollar, a quarter, and a ten cent piece.

A number of alleged errors committed at the trial are assigned. One of which is that the court erred in admitting in evidence the affidavit purporting to be the dying declaration of the deceased. In order that a dying declaration may be admissible in evidence it should be made to clearly appear that such statement was made under a well founded apprehension of immediate or impending dissolution and that all hope of recovery was gone. This may be made to appear from what the injured person said, or where from the nature and extent of his injuries it is evident that he must have known that he could not survive.

*Morris* v. *The State,* 6th Okla. Cr. 29, 115 Pac. 1030;

*Addington* v. *The State,* 8th Okla. Cr. 703, 130 Pac. 311;

*Updike* v. *The State,* 9th Okla. Cr. 124, 130 Pac. 1107;

*Hawkins* v. *The State,* 11th Okla. Cr. 73, 142 Pac. 1093.

In the last case it was held:

"Proof that decedent died within twelve hours after he was shot, that his wounds were necessarily fatal, and that he stated to persons after he was shot that he was dying, and that he expressed no hope of recovery, sufficiently shows that decedent was conscious of impending death, and is in itself a sufficient predicate for the admission of his statements of the circumstances of the homicide as 'dying declarations.'"

These authorities abundantly show that the court committed no error in admitting in evidence the dying declaration of the deceased.

It is also contended that the court committed error in admonishing the jury in the absence of the defendant and his counsel. The record as to this is as follows:

"By the Court: In overruling the motion for a new trial, the Court observes that the sixth ground is in substance an exception to the admonition by the court to the jurors and bailiffs having in charge the jury in this case, on Sunday in the absence of the defendant; let the record show that certain alleged conduct was brought to the attention of the Court which the Court deemed wise to check in the interest of justice, and that the Judge came to the Court room where the jury were and in the presence of the jury and bailiffs cautioned the jury and bailiffs against permitting the jury to separate, and that they should speak to nobody either concerning this case nor on any other subject, and that they must keep themselves together as a body of jurors and not communicate to the outside world, to nobody except through their bailiffs or by permission of the court, and that this was in the absence of the defendant and his counsel, and was not in open court, and the court not being convened.

Mr. Crump. The defendant agrees that that may be the record in the case as to the sixth assignment."

It is the duty of the court to prevent, if possible, any misconduct of the part of the jury, and it is the duty of the officer in charge to see that jurors properly conduct themselves and observe the requirements of law, and that they do nothing that would prevent a full and fair consideration of the case. It is true also that it is the duty of the court to communicate with the jury only in open court, in the presence of the defendant and his counsel. But this is far from saying that every irregularity will work a reversal of the judgment. No injury was alleged by this conduct, nor was any attempted to be proved, and while the burden would be on the state to show no prejudice to the substantial rights of the defendant, we think the record shows that burden has been fully met. The language used by the court could not injure the defendant. The case of *Horton* v. *The State*, 10th Okla. Cr. 294, 136 Pac. 177, is in point. There this court held:

"Where, after the jury had retired for deliberation, the judge noticed some of the jurors in the open windows of the jury room.

and directed the sheriff to tell the jurors to keep out of the windows, and the sheriff told the jurors to 'get out of the windows and get together and reach a verdict,' held, that the words spoken were not of such a nature that prejudice to the defendant will be presumed."

We have examined the other matters discussed by counsel and have arrived at the conclusion that there is no merit in this appeal.

It would seem that the demands of justice and the protection of society clearly required in this case that the penalty prescribed by law for the punishment of the crime of murder should have been imposed upon the defendant, and the only basis for the verdict of a less grade of crime is the testimony of the defendant himself, "swearing his own neck out of the halter." No one can read the evidence without being abundantly satisfied and impressed that the defendant has not been adjudged the degree of punishment he so richly deserves. Juries frequently render such verdicts, and this can only be accounted for upon the theory that the verdict was the result of a compromise of opinion. The judgment of the District Court of Okmulgee county is affirmed.

FURMAN and ARMSTRONG, JJ., concur.