# QUEENAN v. OKLAHOMA.

ERROR TO THE SUPREME COURT OF THE TERRITORY OF OKLAHOMA.

No. 246. Argued April 16. 17, 1903.—Decided June 1, 1903.

1. A witness for the defence in a murder trial, who is not an expert, but who knew the prisoner before the killing, may state the opinion he formed at the time as to the mental condition of the prisoner, and sum up his impressions received at the time he saw the prisoner before the killing, but, except under special circumstances, he may not state an opinion formed since the killing.

2. It is not error to instruct the jury that under § 1852 of the Oklahoma Statutes of 1893 they should acquit if they found the accused was not able to know that the act of taking his victim's life was wrongful, and was not able to comprehend and understand the consequences of such act, if the jury also was instructed that in order to find him guilty they must find that he knew and understood that it was wrong to take the life and was able to comprehend and understand the consequences of such act.

3. When, during the course of a murder trial in Oklahoma it transpires that a juror, contrary to his statements on the voir dire, is disqualified and the prisoner has an opportunity to have him excused and the trial begun anew and his counsel refrain from making any objection at that time, it is too late for him to complain after the verdict of guilty has been rendered.

THE case is stated in the opinion of the court.

*Mr. Stillwell H. Russell* for plaintiff in error. *Mr. J. W. Johnson, Mr. C. B. Ames* and *Mr. H. H. Howard* were on the brief.

*Mr. J. C. Robberts*, attorney general of the Territory of Oklahoma, for defendant in error. *Mr. C. H. Woods* was on the brief.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is an indictment for murder upon which the plaintiff in error has been found guilty, and has been sentenced to be hanged. It comes here by writ of error to the Supreme Court of the Territory of Oklahoma, that court having decided that there

was no error in the proceedings and having affirmed the judgment. 11 Oklahoma, 261. The errors assigned will be taken up in the order in which they were argued.

1. The only defence was insanity. A lawyer, called as a witness for the defendant, stated that he knew the prisoner quite well; that the prisoner was his barber for some years, and that he saw him on the day before the killing. He then described the appearance and conduct of the prisoner, and said that at the time he did not notice any difference from the prisoner's usual demeanor. He then was asked if since the killing he had formed an opinion as to the prisoner's mental condition at that time. This opinion he was not allowed to state, and this is alleged as error. It will be seen that the witness was allowed to sum up his impressions received at the time. The court said in terms that he might state any condition that existed then or any impression that it made upon the witness's mind as to the prisoner's condition. That is all that was decided in *Connecticut Mutual Life Insurance Company v. Lathrop,* 111 U. S. 612. Some States exclude such opinions, even when formed at the time. But, as is pointed out in the case cited, it is impossible for a witness to reproduce all the minute details which he saw and heard, and most witnesses make but a meagre and halting effort. Therefore, in this as in many other instances, after stating such particulars as he can remember, generally only the more striking facts, an ordinary witness is permitted to sum up the total remembered and unremembered impressions of the senses by stating the opinion which they produced. To allow less may deprive a party of important and valuable evidence that can be got at in no other way. But, on the other hand, to allow more, to let a witness who is not an expert state an opinion upon sanity which he has formed after the event, when a case has arisen and become a matter of public discussion, must be justified, if at all, on other grounds. It is unnecessary to lay down the rule that it never can be done, for instance, when the opinion clearly appears to sum up a series of impressions received at different times. *Hathaway v. National Life Insurance Co.,* 48 Vermont, 335, 350. It is enough to say that, at least, it should be done with caution and not without special

reasons. In this case the only knowledge shown by the witness was the familiarity of a man with his barber. So far as the evidence went, his present opinion might have been the result of interested argument, and, leaving such suggestions on one side, no reason of necessity or propriety was shown for the statement that would not have applied to any other man who had had his hair cut in the prisoner's shop. It does not appear that there was error in the ruling of the court.

2. The next error alleged is in the following instruction of the court:

"Homicide committed by one who has not sufficient knowledge and understanding to understand right from wrong and to comprehend and understand the consequences of his act is excusable for any act in reference to which his mind is in such weakened condition. But it is not every derangement of the mind that will excuse one from the commission of crime. If one has sufficient mind and understanding to know right from wrong regarding the particular act, and is able to comprehend and understand the consequences of such act, the law recognizes him as sane, and holds him responsible for such acts; and in this connection, if you should find beyond a reasonable doubt that the defendant took the life of Ella Queenan, as charged in the indictment, and that at the time of such homicide he knew and understood that it was wrong to take her life and was able to comprehend and understood the consequences of such act, then and in that event it will be your duty to find the defendant guilty of murder, as charged in the indictment. But, on the other hand, if you should find that he was not able to know that the act of taking her life was wrongful, and was not able to comprehend and understand the consequences of such act, then you should find the defendant not guilty."

By § 1852 of the Oklahoma Statutes of 1893, "All persons are capable of committing crimes, except . . . all persons of unsound mind, including persons temporarily or partially deprived of reason, upon proof that at the time of committing the act charged against them they were incapable of knowing its wrongfulness." It was argued very earnestly that the latter part of the instruction added a second condition to ac-

quittal by directing it if the jury found that the prisoner was not able to know. that the act was wrongful, "and was not able to comprehend and understand the consequences of such act." But, on the other hand, the condition of a verdict of guilty was made to be a finding that the prisoner knew and understood that it was wrong to take the life, "and was able to comprehend and understood the consequences of such act." So that the most material part of the charge, that relating to conviction, was favorable to the prisoner. If it be supposed that such abstract language was remembered and was nicely considered and analyzed by the jury, the total effect of the charge was that, unless the two conditions concurred, the prisoner must be acquitted. We do not mean to imply that any part of the instruction, fairly understood, was wrong, but for purposes of decision it is enough to say what we have said. The instructions asked and refused were covered by that which was given as stated above.

3. In the course of the trial the government announced that since the last adjournment it had been informed that one of the jurors, named, had been convicted in Nebraska of what, by the law of that State, was a felony, grand larceny, at a time and place mentioned, contrary to the statement of the juror on the voir dire. We assume, for purposes of decision, that this disqualified the juror from serving in any case. ; Stat. Oklahoma, §§ 3093, 5182, 5183. The court asked the counsel for the prisoner what they desired to do, and its intimation indicated that if the objection were pressed the juror would be excused. This, of course, meant that the trial would have to be begun over again. The counsel for the prisoner answered that they had nothing to say, and the trial went on. It now is argued that the defendant was deprived of a constitutional right, which he could not waive. *Thompson* v. *Utah*, 170 U. S. 343. The contrary plainly is the law as well for the Territories as for the States. See *Kohl* v. *Lehlback*, 160 U. S. 293, 299 *et seq.; Raub* v. *Carpenter*, 187 U. S. 159, 164.

It is argued that the court could not have permitted a challenge at that time, because the statutes of Oklahoma, § 5177, provided that "the court for good cause shown may permit a

juror to be challenged after he is sworn to try the cause, but not. after the testimony has been partially heard." This statute cannot be construed as going merely to the order of procedure— as depriving a party of the right to challenge pending the trial, but as preserving the right for the purpose of a motion for a new trial. Either it does not apply to the case of a disqualification discovered, as this was, after a part of the evidence was in, or it purports to take away the right altogether. Whatever may be the true construction of the last clause, the court seems to have been ready to stop the trial. But if the court's view was wrong, if the statute is constitutional—as to which we do not mean to express a doubt—the prisoner had no right to complain, and if it is not, it was his duty to object at the time if he was going to object at all. He could not speculate on the chances of getting a verdict and then set up that he had not waived his rights.

*Judgment affirmed.*