# W. D. HORTON v. STATE.

### No. A-1626.    Opinion Filed November 15, 1913.

#### (136 Pac. 177.)

1.    APPEAL—Harmless Error—Jury. Where, after the jury had re-
tired for deliberation, the judge noticed some of the jurors in the
open windows of the jury room, and directed the sheriff to tell
the jurors to keep out of the windows, and the sheriff told the
jurors to ''get out of the windows and get together and reach
a verdict,'' held, that the words spoken were not of such a
nature that prejudice to the defendant will be presumed.

2.    NEW TRIAL—Grounds—Disqualification of Jurors. When affi-
davits charging jurors with having expressed opinions as to the
guilt of the defendant prior to their being called as jurors are
relied upon to annul the verdict and obtain a new trial, it must
be clearly shown that neither the defendant nor counsel for
the defendant knew the facts averred in such affidavits at the
time the jury was impaneled.

3.    SAME—Disqualification of Juror—Objection. Where a defendant
accepts a juror without availing himself of the right to examine
such juror on voir dire, or without availing himself of the right
to challenge him for cause, he will not, after conviction, be
allowed to make the objection that the juror had formed and
expressed an opinion averse to him, as a ground for a new trial.

4.    JURY—Disqualification—Objection—Waiver. A known ground
of disqualification of a juror, before or during the progress of
the trial, is waived by withholding it, or refusing or declining
to raise the objection until after verdict.

5.    APPEAL—Harmless Error—Disqualification of Jurors. As a general
rule, a verdict will not be set aside for reasons that would be
sufficient to disqualify a juror on a challenge for cause, which
existed before the juror was sworn, but which was unknown to
the defendant until after conviction, unless it appears from
the whole case that the defendant suffered injustice from the
fact that the juror served in the case.

6.    APPEAL—New Trial—Findings. As a general rule, the finding
of the trial court upon an issue of fact, arising upon affidavits
and evidence adduced on a motion for new trial, will not be
disturbed, where the evidence reasonably tends to support such
finding.

7.    JURY—Conduct of Jurors — Conversation with Others. The
statutory rule (Rev. Laws 1910, sec. 5906), prohibiting conver-
sation between the jurors and the officer in charge, will not pre-
vent the officer from enforcing an order of the court in a crimi-
nal case by telling the jurors to keep out of the open window of
the jury room.

*Appeal from District Court, Jefferson County;*
*Frank M. Bailey, Judge.*

R. D. Horton was convicted of manslaughter in the first degree, and appeals. Affirmed.

The plaintiff in error was convicted of manslaughter in the first degree, on an information charging him with the murder of Reuben Horton on the 5th day of August, 1911. On the 19th day of September, 1911, judgment was rendered, and, in accordance with the verdict of the jury, he was sentenced to be imprisoned in the penitentiary for the term of six years. To reverse the judgment an appeal was perfected.

The evidence shows that the defendant, R. D. Horton, was an elder brother of the deceased, Reuben Horton; that the defendant operated a telephone exchange in his dwelling house at Sugden, which was on the principal street of the town. On the evening of August 5th the defendant was in the telephone exchange and the deceased outside on the porch, and they were quarreling; the defendant stepped out, shooting at the deceased. The deceased fell from the porch, and died almost instantly. There were five wounds in his body. The defendant picked up the body and laid it on the porch and walked into his office, and laid down two pistols, an automatic 38 and a 45 Colt's.

J. J. Garner, a witness for the state, testified that he was standing across the street and saw the deceased standing on the porch opposite the door of the telephone office, and the defendant was shooting; the deceased backed from the porch and fell, the defendant picked him up and laid him on the porch; that he did not see any gun in the deceased's hands, nor did he see him make any effort or attempt to shoot.

J. O. Sanders, a witness for the state, testified that he was a farmer; that he was standing across the street talking to the witness Garner, and saw the Horton brothers on the porch in front of the phone office; that the deceased was stepping backwards, and the defendant was shooting him; that he did not see the deceased make any demonstration with his hands or arms, and did not see a gun in his hand.

N. Johnston testified that he was standing about 500 feet away, and saw the difficulty; that the time was about sundown; that when the first shot was fired the deceased was on the porch and started to walk away; the defendant stepped out the door and shot him four or five times more; the deceased took four or five steps, and fell; that he did not see anything in the hands of the deceased.

Ode Ellis testified that he was engaged in the furniture business at Sugden, and was walking down the street, and saw the deceased step onto the porch, and heard him say something when he reached the door, but did not understand what it was; heard the defendant swear, and tell the deceased not to come in there, to go on; that he walked towards the post office, heard a shot, and looked back and saw the defendant standing in the door shooting at the deceased; that he shot five or six times; that the deceased fell, and witness went for a doctor.

J. S. Irick testified that he issued the Sugden Signal; that he was in the Signal office, and heard persons quarreling; that he stepped out and saw the defendant and the deceased standing in front of the phone office; that they were both swearing; that the deceased came towards him, and he went back in his office, and the deceased came in and borrowed a match and then walked out; he heard him step upon the porch in front of the phone office, and say, "Well, I would like to talk to you a minute if you will," and then one shot was fired, an interval, and then several more shots. The defendant picked up a large gun that was lying near the deceased.

Several other witnesses for the state testified to substantially the same state of facts.

In behalf of the defendant, his wife, Mrs. Nellie Horton, testified that her husband, her sister, and herself were eating supper, and her husband had to go into the office to attend to the switchboard; that the deceased came in, and she invited him to eat supper; that she went into the bedroom with her sister to dress, and saw a pistol lying on the bed and asked the deceased where it came from; that the deceased picked up the pistol and put it in the waistband of his pants, and said, "Have you a

shirt?" and she said, "Yes," and the defendant said, "I thought Lizzie wanted one," and then said, "Have you any supporters?" and she said, "Reuben, you are drinking; you had better go on out"—and her husband said, "Come on, Reuben, and let the girls get ready for church," and the deceased said, "I will get out of your G—d d—n house and never set my foot in it again, you are a G—d d—n black son of a b—h." And her husband said he did not want him to talk that way in his house, and for him to get out, go home, and go to bed. That he went out, and she did not hear any more of him until he came back on the front porch, and he called her husband and said, "Come out here, you damn son of a b—h, and I will shoot your head off," and her husband told him to go away, and he went over to the Signal office, about twenty steps away; that he came back in a short time and repeated his abusive and offensive language, and called witness a damn liar, and pulled his gun and threw it on her, and she ran into the bedroom and heard five shots.

Miss Lizzie Wilson testified that she was the defendant's wife's sister. Her testimony was substantially the same as that of her sister.

The defendant as a witness in his own behalf testified: That he noticed the gun lying on the bed; that the deceased used abusive and offensive language to him. That he asked deceased not to swear before the women folks, and he went out. That deceased came back on the front porch and used abusive language and told him to come out, saying he wanted to shoot witness' damned head off. That deceased then went to the Signal office, and was there a minute or two and came back and began again to curse and abuse witness. That he said to deceased, "You are drinking, Reuben, and go on away, I am not coming out there," and that after some more abusive language deceased said to witness' wife, "You are a G—d damn liar," and drew his gun, and witness then reached for his gun that was on the switchboard. That he heard the deceased's gun click, and he fired six shots. That deceased stepped off the porch and dropped his gun and fell. That he picked deceased up and laid him on the porch. That he shot deceased "because I knew or believed that he would

kill me which he was trying to do." That his gun was a 38 caliber Colt's automatic.

Fred Bear testified that he saw a six-shooter lying between the hand and body of the deceased before the defendant picked the body up.

Four witnesses testified as to the reputation of the deceased in that community as being a quarrelsome and dangerous man.

In rebuttal several witnesses testified that the deceased was not intoxicated that afternoon.

The foregoing statement of facts is sufficient for the purpose of this opinion.

*Stuart, Cruce & Gilbert,* for plaintiff in error.

*Chas. West,* Atty. Gen., and *Smith C. Matson,* Asst. Atty. Gen. (*Monroe Osborn,* of counsel), for the State.

DOYLE, J. (after stating the facts as above). A number of alleged errors in the trial of the case are assigned, which, in so far as they are deemed essential in reviewing the case, will be discussed in the order presented.

The first four assignments are the usual ones: That the court erred in overruling motion for new trial; that the verdict is contrary to law, and is not sustained by the evidence; and errors of law occurring during the trial.

The fifth assignment is, in effect, that after the case had been submitted to the jury, the sheriff was guilty of misconduct in talking to the jury before they had agreed upon their verdict. The record shows that John Wright, sheriff, had charge of the jury; that the jury room was across the street from the hotel; that some of the jurors would lie in the windows of the jury room, and could be seen from the hotel. The judge and the sheriff noticed this, and the judge told the sheriff to tell the jurors to get out of the windows. The sheriff testified that he told the jurors not to lie up in the windows; that the judge had told him to tell them to "get out of the windows and get together and reach a verdict, or get to work and do something"; that the people gathered outside could hear them.

The defendant's counsel cite the case of *Ridley v. State,* 5 Okla. Cr. 522, 115 Pac. 628, and numerous cases from other states, in support of their position.

Our Code provides (section 5906, Rev. Laws 1910):

"After hearing the charge, the jury may either decide in court, or may retire for deliberation. If they do not agree without retiring, one or more officers must be sworn to keep them together in some private and convenient place, and not to permit any person to speak to or communicate with them, nor do so themselves, unless it be by order of the court, or to ask them whether they have agreed upon a verdict, and to return them into court when they have so agreed, or when ordered by the court."

It is the duty of the court and sheriff to prevent, if possible, any misconduct on the part of the jury, and it is the duty of the officer in charge to see that jurors properly conduct themselves and observe the requirements of law, and that they do nothing that would prevent a full and fair consideration of the case. The court noticed that some of the jurors were sitting in the open windows within the hearing of people outside, and directed the sheriff, who was the officer in charge, to tell them not to do so. If the court had seen fit to tell the sheriff to remove the jury from that room to another room, the sheriff would have had to tell the jury to enter another room. It may be that the sheriff in enforcing the order of the judge said more than was necessary, but under the evidence in this case nothing short of error prejudicial to the substantial rights of the defendant would justify us in setting aside the verdict. Private communications, or conversations between jurors and third persons, or the officer in charge, are absolutely forbidden by law, and a defendant is entitled to the presumption that such misconduct would be prejudicial to him, and the burden of proof would be on the state to show that a defendant suffered no injury by reason of such misconduct. *Selstrom v. State,* 7 Okla. Cr. 345, 123 Pac. 557. However, this rule has no application to the objection here made. It is manifest that the words spoken by the sheriff in enforcing the order of the court were not of such a nature that injury

may be fairly presumed. The language used was neither threat nor advice, nor even a suggestion. We think the objection is without merit.

The sixth assignment of error is that John Spivey, one of the jurors, had formed and expressed an opinion adverse to the defendant previous to his being sworn as a juror. In his verified motion for a new trial the defendant states "that said juror was by his counsel fully examined and stated under oath that he had no opinion as to the guilt or innocence of the defendant, and had no knowledge concerning the circumstances surrounding the killing; that he could try the defendant fairly and impartially, and would do so, and that he had no prejudice against the defendant merely because he was charged with the murder of his brother." In support of this ground the affidavit of J. T. Tampen is attached, wherein affiant states that on the 25th day of August, 1911, he had a conversation with the juror, John Spivey, at Nocona, Tex., and while discussing the defendant's case, Spivey said:

"From what I heard Dick Horton ought to be mobbed, and I would be willing to help mob him; any man that would take his brother's life, no punishment would be too bad."

The juror Spivey, being duly sworn, testified that he made no such statement, nor any similar statement; that he knew the affiant Tampen; that when he was a justice of the peace at Fleetwood, affiant was convicted of gambling before him.

In *Smith v. State,* 5 Okla. Cr. 282, 114 Pac. 350, it is said:

"The mere fact that two parties attempted to impeach a juror does not, by any means, settle the question of credibility as between such parties and the juror. If it did, but few verdicts could be sustained, because in almost every case it would be possible to find two or more persons who would make affidavits impeaching a juror. * * * The question of credibility was one to be determined by the trial court, and, in the absence of a showing that this discretion was abused, it cannot be reviewed here. There is nothing in this record to indicate any abuse of discretion on the part of the trial judge."

It is a settled rule of this court that the finding of the trial court upon a question of fact, arising upon affidavits and evi-

dence adduced on a motion for new trial, will not be disturbed where the evidence reasonably tends to support such finding.

The seventh assignment of error is that Josh Wheeler, another one of the jurors, had formed and expressed an opinion adverse to the defendant previous to his being sworn as a juror, as shown by the affidavit of one A. E. Rogers, attached to the motion for new trial. According to this affidavit, Rogers had a conversation with the juror Wheeler at the home of William Rogers on the 10th day of September, 1911, and said juror stated to him, while discussing the defendant's case, "that he had heard of the case of Dick Horton, and that he was on the jury down at Ryan, and that he did not believe that they would get a jury out of the 24 jurors, because he had been talking to all of them about the case, and he did not think any of them would sit on it, for he would not himself. That he saw him in the courthouse, and when he went out he looked as if he had done nothing more than kill a chicken, and that most any man ought to be willing to sit on his jury, and that any man who would kill his brother ought to have to serve a term, but that he did not want to be the man who put it onto him." Counsel contend that the trial court erred in refusing to set aside the verdict on account of the disqualification, prejudice, and misconduct of the juror Wheeler, as shown by the affidavit of A. E. Rogers, which the state did not introduce any proof to deny or contradict. For some reason, not apparent from the record, there is considerable difference between the allegations of the motion for new trial as to the juror Spivey and the juror Wheeler. As to Spivey there is an allegation that in the examination of the jurors on *voir dire* said juror was asked as to his bias and prejudice, but as to the juror Wheeler, no such allegation is made. The only evidence showing that the juror Wheeler was ever placed on his *voir dire* in this case is shown by the record as follows:

"Thereupon said jurors were duly sworn to true answers make to the questions propounded to them touching their qualifications to serve as jurors in said case. Thereupon said jurors were interrogated by counsel for both the state and the defendant."

In view of the condition of the record presented, we cannot say that the defendant's complaint is well founded. In order for the defendant to predicate error on account of the declaration of the juror Wheeler as averred in Rogers' affidavit, it would be necessary for the record affirmatively to show that said juror had been duly examined on *voir dire,* and had stated under oath that he was not biased or prejudiced, and had not formed or expressed an opinion as to the guilt or innocence of the defendant. The record contains no recital of such examination. It only appears from the statement of counsel in their brief. It is not even alleged in the verified motion for a new trial. A defendant must exercise all the rights that he has under the statutes to find out whether or not a juror is qualified before he can take advantage, after verdict, of such juror's incompetency or disqualification.

A defendant cannot sit supinely by and allow disqualified and incompetent jurors to be selected to try him, and then take advantage of his own indifference or negligence, nor can a defendant call upon this court to presume that he asked a juror certain questions, in the absence of a showing in the record that such questions were asked. A known ground of disqualification of a juror before or during the progress of a trial is waived by withholding it or refusing, or declining to raise the objection until after verdict. See *Queenan v. Territory,* 11 Okla. 261, 71 Pac. 218, 61 L. R. A. 324; *Id.,* 190 U. S. 548, 23 Sup. Ct. 762, 47 L. Ed. 1175.

We think it may be safely said that upon principle, if the defendant accepts a juror without availing himself of the right to examine such juror on *voir dire,* for the purpose of testing his impartiality, or without availing himself of the right to challenge him for cause, and it should be discovered after verdict that he was incompetent by reason of prejudice, the defendant would not be entitled to a new trial on that ground under our statute.

In the case of *State v. Morrison,* 67 Kan. 144, 72 Pac. 554, it is said:

"Again, we believe it is a rule of universal application, when a motion for a new trial is supported by affidavits charging members of the jury with having expressed an opinion as to the guilt of the defendant prior to the trial, such affidavits must unequivocally state that both defendant and counsel for defendant were ignorant of such fact at the time of impaneling the jury. In the case at bar the affidavits filed close with the following language, either in substance or exact words: 'The affiant further says that he never told the defendant or any of her attorneys of said conversation until after the trial had closed and the verdict had been rendered in said case.' Neither the defendant nor any of her counsel made any statement as to their knowledge of the making of such statements alleged to have been made by the jurors prior to the trial of the case. * * * There is no allegation in the affidavits that affiant did not communicate to others than the defendant or her counsel the fact that such statements were made. Error is never presumed. The record is insufficient to show the statements alleged to have been made by the jurors, if made, were unknown to the defendant or her counsel prior to the impaneling of the jury."

See, also, *Robinson v. Territory,* 16 Okla. 241, 85 Pac. 451.

In the case of *Stouse et al. v. State,* 6 Okla. Cr. 415, 119 Pac. 271, it is said:

"It is well settled that, as a general rule, a verdict will not be set aside for reasons that would be sufficient to disqualify on a challenge for cause which existed before the juror was sworn, but which was unknown to the accused until after the verdict, unless it appears from the whole case that the accused suffered injustice from the fact that the juror served in the case."

Under the evidence in this case, we think it would be sufficient to say that the verdict returned is almost conclusive of the fact that the defendant was tried by a fair and impartial jury.

Finally, it is claimed that the court erred in giving instruction No. 12. No objection was made or exceptions taken to the instructions given by the court, and no other instructions were requested to be given. We have examined the instruction criticized, and we think that this instruction correctly states the law applicable to this case, and we further find that the charge of the court contains a full and fair presentation of the defense.

Having noticed and considered all of the assignments of error presented by the defendant's brief, and upon a careful examination of the entire record, we are of the opinion that no ·error was committed by the trial court prejudicial to ˙the substantial rights of the defendant. The judgment of conviction is therefore affirmed.

ARMSTRONG, P. J., and FURMAN, J., concur.