### UNITED STATES v. CHAPMAN et al.
### No. 3289.

Circuit Court of Appeals, Tenth Circuit.
Nov. 20, 1946.

Rehearing Denied Jan. 6, 1947.

Fred Smith, of Oklahoma City, Okl. (David L. Bazelon, Curtis P. Harris, Roger P. Marquis and Kelsey Martin Mott, all of Washington, D. C., on the brief), for appellant.

Earl A. Brown, of Ardmore, Okl., for appellees.

Before PHILLIPS, HUXMAN and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

The United States condemned and took 3,591 acres of land in the Eastern District of Oklahoma, owned by Fred A. and Elise Chapman, for the Denison Dam and Reservoir on the Red River in Texas and Oklahoma. A trial to a jury resulted in a verdict in favor of the landowner in the sum of $228,000, as just compensation for the taking of the land. Judgment was entered upon the verdict, and the Government has appealed.

It is contended by the Government that the trial court committed reversible error: (1) by sustaining the landowner's challenge to a prospective juror on the grounds that he was a civil service employee of the Government; (2) in overruling the Government's challenge for cause (after having exhausted its peremptory challenges) to another prospective juror, C. W. Tomlinson, on the grounds that he had served as an expert witness against the Government in prior condemnation proceedings, and was friendly to the landowner; and (3) that a new trial should have been granted because of remarks made in the presence of the same juror, Tomlinson, outside and unconnected with the trial, which, it is urged, deprived the Government of a fair and impartial trial.

In the course of the examination of the jury on voir dire, one prospective juror, whose name is not shown, answered that he was an inspector at Camp Maxey, employed by the Government under civil service. The landowner challenged him for cause, and the court excused him over the objections of the Government. It is said that the prospective juror was qualified under applicable law, and his discharge without cause constituted prejudicial and reversible error.

In condemnation proceedings in federal court, the practice, pleadings, and modes of procedure must conform, "as near as may be", to those existing at the time in like causes in the courts of record of the state within which such district court is held. 40 U.S.C.A. § 258; rule 81(a)(7), Federal Rules Civil Procedure, 28 U.S.C.A. following section 723c. Furthermore, the qualifications of jurors in federal courts are the same as those of the highest court of law in the state wherein the federal court is held. 28 U.S.C.A. § 411. Section 572, Title 12 O.S.A., in material part, provides that a petit juror, "Who is the employer, employee, counselor, agent, steward

or attorney of either party * * * may be challenged for such causes; in either of which cases the same shall be considered as a principal challenge, and the validity thereof be tried by the court * * *." The text of this Section was lifted almost literally from the Common Law, according to which a principal challenge carries with it prima facie evidence of favor, which, if true, cannot be overruled. See 3 Blackstone, 363. In other words, the inquiry is limited to the true status of the prospective juror, and not the question of his favor.

■ Based upon a close analysis of the Common Law, as applied to "master" and "servant", the United States Supreme Court has now decided that there is no settled practice under the Common Law establishing an "absolute disqualification" of governmental employees to serve as jurors in cases wherein the Government is a party. It is said that "The imputation of bias simply by virtue of governmental employment, without regard to any actual partiality growing out of the nature and circumstances of particular cases, rests upon an assumption without any rational foundation." United States v. Wood, 299 U.S. 123, 57 S.Ct. 177, 187, 81 L.Ed. 78. Thus, we are sure that, under the Common Law, the prospective juror was not disqualified per se, merely because he was a government employee. The Oklahoma Supreme Court has not considered the point, but we perceive no reason why it would not adopt this construction and interpretation of the synonymous words "employer" and "employee", as used in the Oklahoma statute.

■ Be that as it may, an interested party to a lawsuit has no vested right in any particular juror. The right of challenge is the right to exclude incompetent jurors, not to include particular persons who may be competent. All the Government is entitled to under the law is to have its cause tried to an impartial jury of 12 men, and unless it is shown otherwise, the error of the court, if there be error, in discharging or excusing a qualified juror, is not prejudicial or reversible error. Bank of Buffalo v. Venn, 68 Okl. 43, 171 P. 450; Mathews v. State, 19 Okl.Cr. 153, 198 P. 112; Spies v. People of State of Illinois, 123 U.S. 131, 8 S.Ct. 22, 31 L.Ed. 80; 31 Amer.Juris., p. 644.

The question whether juror Tomlinson was disqualified and should have been excused for cause, presents an entirely different problem, because he was retained on the jury, and the integrity of its verdict therefore depends upon his qualifications.

In addition to grounds for principal cause of challenge, hereinbefore specified, Section 572, Title 12 O.S.A., of the Oklahoma Statute, also provides in material part that any juror may be challenged on "Suspicion of prejudice against, or partiality for either party", and that the validity of all such challenges shall be determined by the court. Our question then is not whether Tomlinson should have been excused for "principal cause of challenge", (as in the case of the Government employee), but whether the Government's "suspicion of prejudice" or partiality is sufficiently grounded to deprive it of a fair and impartial trial.

■ Like other suitors, the Government is entitled to a fair and impartial trial before a jury of 12 impartial and unbiased jurors. Impartiality in the sense that we use it is not a technical conception. It is a state of mind or mental attitude, for the determination of which there is no fixed formula. United States v. Wood, supra; Baker v. Hudspeth, 10 Cir., 129 F.2d 779. Whether a juror is prejudiced or partial in the sense that one of the parties is denied a fair and impartial trial, is not a procedural matter to be determined by statutory construction. It is one of vital substantive law under the Constitution, to be resolved according to the highest standards of human conduct. It is a question first addressed to the good sense of the trial judge, subject to review under the supervisory power inherent in appellate jurisdiction. Cf. McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819; Thiel v. Southern Pacific Co., 66 S.Ct. 984.

The record shows that Tomlinson called the trial judge the night before the date of the trial to tell him that he knew the landowner, and to inquire whether in view of his acquaintance with him, he should report

for jury service. He was instructed to appear, and when called as a juror, the court interrogated him concerning his relationship with Chapman. In answer to questions, he related that he had known Chapman for some 20 years, had been in his home some two or three times, knew members of his family, had no business with him, but had discussed pieces of legislation with him while pending before the legislature, in which he was not actively interested, but to give Chapman "my figures when he asked for them." (Chapman had been a state senator). When asked by the court whether he could listen to all of the evidence and the argument from both sides and determine the issues submitted to him freely and fairly to both the Government and Chapman, he answered, "Yes, sir." In answer to questions propounded by the Government, he admitted that he had been an expert witness in a condemnation case involving land in this project; that he appeared for the landowner and testified to subsurface values. He would not say that he had a definite opinion as to land values in that territory, but that he had some knowledge. He did say, however, that he had no opinion or knowledge of the value of the land involved in this particular case.

When these facts were developed, the Government challenged the juror for cause on the ground that he had testified in condemnation cases against the Government involving the same question as here. Whereupon the court observed, "Well, I don't understand a witness that testified is necessarily for or against either party. He was a witness called by the landowner. I will make this general statement. A witness shouldn't be for or against either side." Tomlinson interjected, "I believe I was." The court answered, "Well, the court didn't agree with you in that matter either. I still don't think that disqualifies you to sit in this case, or I would have told you last night not to come over here. The only thing I am interested in now, they are not taking the minerals, you being a geologist, do you have an opinion about the minerals in this vicinity, mineral values? Answer, "I have some information, your honor." The court, "I don't know

whether it is that it is worth more or has less value. If it has mineral values would you then have an idea, that even though the Government is not taking the minerals there would be definite damage?" Answer, "It would depend on the position of the land, sir, and I am not familiar with that. I don't know except it is along the river evidently from what has been said. If the matter of minerals came up I would attempt to appraise it fairly without bias." The court, "Would you be able to listen to witnesses and not use your own opinion?" Answer, "Yes, sir. As to minerals you mean?" The court, "Yes, sir." Answer, "I surely would try." The court, "I will ask you one other question. You having been an expert witness as to values in another case, do you become an expert witness in the jury room and exercise your prerogative, of course, to make argument on one side or the other as to value, or will you endeavor to decide it from the testimony purely?" Answer, "From the testimony. Although I judge if you send us to look at the land we are expected to form some idea ourselves. That is all." He further said that he was not familiar with the compensation paid by the Government in any case, and if selected as a juror, he would be fair to both sides. The court overruled the challenge and the Government inquired further concerning the children of Tomlinson and Chapman, and it developed that their children were friends and had come to his home, but that such relationship or association would not influence him in any way.

The record contains a transcript of Tomlinson's testimony in the condemnation case, in which he appeared as an expert witness for a landowner named Surber, and it seems fair to say that he was more of an advocate than a witness. As an example, at one point, the court admonished him to quit thinking about what the present case involved and answer on the facts. The court said he was afraid the witness was thinking about the law involved, which was a common thing with an expert witness, and that he was not entitled to consider what effect his answer would have upon the result of the lawsuit. In sum, Tomlinson as an expert witness, was

shrewd, eager, and as he admitted on voir dire, was for the landowner, Surber, who now appears as an expert witness for the landowner in this case, while Tomlinson sits in the jury box. These are the circumstances under which Tomlinson was challenged, and under which we must judge his competency.

The same judge presided in both trials, and after careful consideration, determined that Tomlinson was a fair and impartial juror. His judgment should not be overturned unless abuse of discretion is clearly apparent. Meier v. Edsall, 192 Okl. 529, 137 P.2d 926; Rice v. Emerson, 181 Okl. 51, 72 P.2d 498; Reynolds v. United States, 98 U.S. 145, 156, 25 L. Ed. 244; Spies v. People of State of Illinois, 123 U.S. 131, 8 S.Ct. 22, 31 L.Ed. 80; Holt v. United States, 218 U.S. 245, 246, 248, 31 S.Ct. 2, 54 L.Ed. 1021, 20 Ann.Cas. 1138.

It is said that when a juror testifies that he believes he can, and the court finds as a matter of fact that he will, if selected, render an impartial verdict on the evidence, he is an impartial juror as required by the law. Rice v. Emerson, supra. A juror's answer to questions touching his state of mind is primary evidence of his competency, but the ultimate question is a judicial one for the court to decide, and in case of doubt, justice demands that the challenge be allowed. Scribner v. State, 3 Okl.Cr. 601, 108 P. 422, 35 L.R.A.,N.S., 985; Temple v. State, 15 Okl.Cr. 176, 175 P. 733, 736; Crawford v. United States, 212 U.S. 183, 197, 29 S.Ct. 260, 53 L.Ed. 465, 15 Ann.Cas. 392; 31 Amer.Juris., p. 638. Only by a punctilious regard for a suspicion of prejudice can we hope to maintain the high traditions of our jury system. We must make sure that the lamentations of the unsuccessful litigant is without foundation, either in fact or circumstance.

Tomlinson appeared as a witness in the Surber condemnation proceedings not to give facts, but to express an opinion as an expert on values. This of course is not only acceptable and desirable, but essential to a decision on the vital issue in the case. But, no one would be so naive as to believe that an opinionated witness is free from bias on the side of the issues he supports. It is difficult for us to understand how Tomlinson could lay aside the bias of his opinion in the former condemnation case, for a wholly indifferent attitude in this case. This is especially so when he must weigh the expert testimony of the man for whom he testified as an expert witness in the former case. We know that human nature doesn't work that way. The suspicions of the Government may be more fanciful than real, but we are convinced that they are not wholly without foundation, and that, in our judgment, is sufficient.

We have great respect for the high sense of justice and discernment of the learned trial judge, but when considered in the light of the high concept of our jury system, and the necessity for keeping it clean, it is our view that Tomlinson was a partial juror, and should have been discharged upon challenge for cause. Especially is this true, since the Government had exhausted its peremptory challenges. It is sufficient that his partiality entered into the deliberations of the jury. We must presume that its verdict was contaminated by it. We conclude that the refusal of the court to sustain the challenge and discharge the juror was prejudicial and reversible error.

One evening during the trial of the case, and while the court was in recess, Tomlinson overheard the remarks of a retired judge of this court in the lobby of a hotel, concerning a condemnation case which he had tried in federal court involving land in this project. Apparently a group of interested listeners had gathered about the judge, including this juror, the trial judge in this case, and Mr. Harris, the attorney for the Government. Nothing was said concerning the probable effect of these remarks upon the juror who overheard them. After the verdict, however, and for the first time, on motion for new trial, Tomlinson was called to testify concerning what he overheard of the judge's remarks.

He said that he listened to the judge discuss other proceedings on land acquisi-

422

tioned for the Dam site at Denison, and that the judge told how he had tried a case involving the land of an elderly woman on the Texas side; how he had taken her side and had seen that she had adequate representation and compensation for her land. He said that he understood it was the judge's attitude that they were not offering her adequate compensation for the land, but that he did not interpret his attitude to the instant case—that he made no general statement. . He further testified that he was not influenced by what the judge said, because the land involved in this case was entirely different. The trial judge in this case then dictated into the record a statement to the effect that he was present and overheard the remarks of the judge in the lobby of the hotel; that while they were not calculated to help the Government, he did not think they would be prejudicial to a juror who might be listening, else he would have called the speaker's attention to the fact that a juror was present. The trial court concluded by finding that the conversation he heard did not, in his opinion, prejudice or influence juror Tomlinson in arriving at his verdict.

 The juror was apparently a willing and interested listener to the side remarks, but counsel for the Government was present when they were made; if they were derogatory or prejudicial to the interest of the Government; if they were such as to lead one to believe that a juror hearing them would be influenced thereby, it was the duty of counsel for the Government to speak before the case was submitted and a verdict returned. Hopkins v. Settles, 46 Okl. 801, 149 P. 890. "He could not speculate on the chances of getting a verdict and then set up that he had not waived his rights." Queenan v. Oklahoma, 190 U.S. 548, 23 S.Ct. 762, 764, 47 L.Ed. 1175. It is our view that the remarks, standing alone, did not prejudice the rights of the Government, but the incident does lend color to our conviction that Tomlinson was a partial juror, and that the Government did not therefore have the fair and impartial trial that the high standards of our jury system demand.

The case is reversed and remanded with directions to grant a new trial.