OPINION
Petitioner-appellant, James G. Hanna, appeals the decision of the Warren County Court of Common Pleas denying his petition for postconviction relief ("PCR"). We affirm the decision of the trial court.
In August 1977, appellant was charged with aggravated murder and aggravated robbery. He was convicted in 1978 and received a life sentence. Appellant was incarcerated in the Mansfield Correctional Institution ("MCI"). Appellant was transferred from MCI to the Lebanon Correctional Institution ("LCI") on December 18, 1996. On August 18, 1997, an inmate named Peter Copas was placed in the cell that appellant occupied at LCI. Appellant and Copas had disputes immediately and Copas filed a request to be moved to another cell because they were unable to co-exist.
On August 22, 1997, after four days of celling together, appellant stabbed Copas above his right eye with a sharpened paintbrush handle and beat him unconscious with a padlock wrapped in a sock. Appellant broke off the paintbrush handle while it was still lodged in Copas' brain. When Copas regained consciousness, he began screaming. Correction Officer Doug Stewart came to aid Copas as he did his 6:00 a.m. rounds. Copas was taken to the LCI infirmary where he was interviewed and treated.
After preliminary treatment in the LCI infirmary, Copas was taken to Middletown Regional Hospital. The hospital emergency room staff was never informed that Copas was the victim of a stabbing to the head. Copas was x-rayed and returned to the LCI infirmary the same day.
On August 23, 1997, the LCI medical director, Dr. James McWeeney, examined Copas and recommended that a CAT scan be performed on Copas. On August 26, 1997, a CAT scan was performed on Copas at the Ohio State University ("OSU") Hospital. The CAT scan revealed there was a four-inch piece of the paintbrush handle still lodged in Copas' brain. Doctors at the OSU Hospital performed surgery on August 27, 1997, and the piece of the paintbrush handle was removed from Copas' brain. On September 5, 1997, Copas lapsed into a coma and was declared dead on September 10, 1997.
The autopsy revealed a small piece of the paintbrush handle remained in Copas' brain. A forensic pathologist, Dr. Keith Norton of the Franklin County Coroner's office, determined the cause of death to be a hemorrhage from a blood vessel weakened either by the impact from the paintbrush handle or from an infection. Dr. Norton stated, however, that the autopsy revealed no abscess formation in the brain that would indicate infection.
On January 26, 1998, appellant was indicted for aggravated murder under R.C. 2903.01(B) and (C), with three death specifications. The court appointed counsel to represent appellant. Appellant's jury trial began on October 28, 1998. On November 4, 1998, the jury returned guilty verdicts on the aggravated murder count and all specifications. After the mitigation hearing, the trial court sentenced appellant to death.
On December 22, 1999, appellant filed his R.C. 2953.21 PCR petition. A motion for discovery was filed on February 16, 2000. The trial court did not rule on appellant's motion for discovery. On March 22, 2001, the trial court dismissed the PCR petition without an evidentiary hearing. This appeal follows, in which appellant requests that his case be remanded for new trial or, alternatively, that the court grant him discovery and an evidentiary hearing on his PCR petition. Appellant raises three assignments of error:
Assignment of Error No. 1:
 THE TRIAL COURT ERRED BY DISMISSING APPELLANT'S PCR PETITION, WHERE HE PRESENTED SUFFICIENT OPERATIVE FACTS AND SUPPORTING EXHIBITS TO MERIT AN EVIDENTIARY HEARING AND DISCOVERY.
The decision of the trial court to deny a PCR petition without a hearing is reviewed for an abuse of discretion. State v. Watson (1998),126 Ohio App.3d 316, 324, appeal dismissed, 82 Ohio St.3d 1413. An abuse of discretion is more than an error of law or judgment; "it implies that the court's attitude is unreasonable, arbitrary, or unconscionable."State v. Adams (1980), 62 Ohio St.2d 151, 157.
PCR petitions are governed by R.C. 2953.21, which states in pertinent part:
 (A)(1) Any person who has been convicted of a criminal offense * * * and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the constitution of the United States may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief.
A PCR proceeding is not an appeal of a criminal conviction, but a collateral civil attack on a criminal judgment. State v. Steffen
(1994), 70 Ohio St.3d 399, 410. Under R.C. 2953.21, a hearing is not automatically granted upon the filing of a PCR petition. State v.Strutton (1988), 62 Ohio App.3d 248, 251. Before granting a hearing, the trial court must determine, upon consideration of the petition, the supporting affidavits, all the files and records pertaining to the underlying proceedings, and any supporting evidence, whether the petitioner has "set forth sufficient operative facts to establish substantive grounds for relief." State v. Calhoun (1999),86 Ohio St.3d 279, paragraph two of the syllabus; R.C. 2953.21(C).
The petitioner bears the initial burden to provide evidence containing sufficient operative facts to demonstrate a cognizable claim of constitutional error. State v. Kapper (1983), 5 Ohio St.3d 36, 37-38, certiorari denied, 464 U.S. 856, 104 S.Ct. 174. Moreover, before a hearing is warranted, the petitioner must demonstrate that the claimed errors resulted in prejudice. Calhoun, 86 Ohio St.3d at 283. The decision to grant the petitioner an evidentiary hearing is left to the sound discretion of the trial court. Id. at 284.
Appellant argues that his PCR petition presented sufficient operative facts supported by evidence outside the record and therefore meets the required pleading standard and must not be summarily dismissed without an evidentiary hearing. Within the fifteen grounds for relief in appellant's PCR petition, there were five key contentions. First, appellant alleges that the jury was not fair and impartial because one juror, Howard Reeves, had a felony conviction, therefore making him ineligible to be a member of the jury. Second, appellant claims he received ineffective assistance of counsel for various reasons. Third, appellant claims the state withheld exculpatory, impeaching and mitigating evidence. Fourth, appellant claims the death penalty is cruel and unusual punishment. Appellant finally claims that the cumulative effect of errors should render his sentence void or voidable.
In support of the contentions in his PCR petition, appellant provided the trial court with approximately twenty-eight items. The items include Juror Reeve's juror questionnaire and criminal record, affidavits from appellant's attorneys, attorney experts, psychologists, appellant's family, execution experts, prison experts and prison personnel, exhibits containing the investigative and incident reports of the stabbing, and Copas' prison, medical and post mortem reports.
Before a hearing is warranted, the petitioner must demonstrate that the claimed errors resulted in prejudice. Calhoun, 86 Ohio St.3d at 283. The decision to grant the petitioner an evidentiary hearing is left to the sound discretion of the trial court. Id. at 284. The trial court determined appellant's evidence was insufficient to set forth operative facts to establish substantive grounds for relief. Consequently, the trial court determined the evidence did not demonstrate a cognizable claim of constitutional error that resulted in prejudice to appellant. Therefore, the trial court determined a hearing was not required before dismissing the PCR petition.
The trial court concluded appellant alleged no operative facts to indicate (1) how the inclusion of Juror Reeves prejudiced his right to a fair and impartial jury; (2) a reasonable probability that the referenced items would result in different findings by the jury; (3) a constitutional violation; (4) that trial counsels' presentation violated the standards of Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct 2052; (5) that the PCR process is ineffective; (6) that execution by electrocution violates the federal and Ohio Constitutions; or (7) a cumulative effect of errors. Upon review of the evidence, we find that the trial court's decision was not unreasonable, arbitrary, or unconscionable. Therefore, a hearing was not required before dismissal of the PCR petition.
Appellant argues he was denied a fair and impartial jury because a convicted felon, Juror Reeves, was allowed to sit on the jury in violation of R.C. 2961.01 and 2951.09. In a number of cases in this state, courts have pronounced the general rule to be that if one not having the qualifications of a juror is retained upon the panel, without the knowledge of the party or his counsel and after reasonable diligence was used to ascertain the fact when the jury is impaneled, a new trial should be granted. See Cottman v. Federman Co. (1942), 71 Ohio App. 89,99.
It is equally clear that the proper time to make an objection with respect to a juror's qualifications is at the impaneling of the jury. If an objection is not taken, the matter is waived unless the party is able to show to the court, upon hearing, that with the exercise of diligence he could not have made the objection at the proper time. State v.Stukey (1973), 40 Ohio App.2d 512, 520. See, also, Watts v. Ruth
(1876), 30 Ohio St. 32, 36, (juror is a minor); Kenrick v. Reppard
(1872), 23 Ohio St. 333 (juror not an elector); Eastman v. Wight (1854),4 Ohio St. 156, 161 (juror not an elector); Hayward v. Calhoun (1853),2 Ohio St. 164, 166 (juror belonged to former jury in same case); Conradv. Kerby (1940), 66 Ohio App. 359 (juror statutorily ineligible).
Among the various reasons given for the rule requiring objection at the impaneling of the jury are to prevent constant mistrials and to protect the rights of the adverse party. See Cottman, 71 Ohio App. at 99. The principal reason for the rule is that "it would be trifling with the forms of justice to permit a party to waive these rights that he should exercise before the jury are sworn, and run the chances of a verdict, and after it had gone against him, to use it for the purpose of obtaining a new trial." Haywood, 2 Ohio St. at 166. In other words, "[a] defendant cannot be satisfied with a juror [at the time the jury is impaneled] * * * and then be heard to say after conviction that he is not then satisfied. One may not play fast and loose in this fashion." Fry v.State (1932), 43 Ohio App. 154, 156.
In Queenan v. Oklahoma (1902), 190 U.S. 548, 23 S.Ct. 762, during trial one of the jurors was discovered to be a convicted felon, contrary to the statement of the juror during voir dire. Id. at 763. The trial court asked defense counsel what they desired to do, and defense counsel answered they had nothing to say. Id. The trial proceeded and the defendant was found guilty. Id. Defendant then argued that he was deprived of a constitutional right, which he could not waive. Id. The United States Supreme Court held that "it was [the defendant's] duty to object at the time, if he was going to object at all. He could not speculate on the chances of getting a verdict and then set up that he had not waived his rights." Id., 190 U.S. at 552, 23 S.Ct. at 764.
Similarly, with the exercise of due diligence, appellant had the opportunity to take exception to Juror Reeves at the proper time. In the prospective juror questionnaire, Juror Reeves answered five separate questions by indicating that he, a member of his family, or someone close to him had been arrested, convicted, and served six months in jail and five years on probation. It does not appear that Juror Reeves attempted to conceal the nature of his criminal record. Appellant's counsel had the obligation to ask questions that would have revealed whether Juror Reeves was a suitable juror. See State v. Woodards (1966),6 Ohio St.2d 14, 22. Appellant's counsel could have easily inquired about the nature of Juror Reeves' criminal past at the impaneling of the jury given the answers Juror Reeves furnished on the juror questionnaire.
There is nothing in the record to indicate appellant's counsel was prohibited from inquiring into the particulars of Juror Reeves' status as a felon during voir dire. There is nothing in the record to indicate that appellant's counsel ever requested a challenge for cause or a peremptory challenge as to Juror Reeves. Further, appellant has alleged no operative facts to indicate that the jury who heard his case was other than fair and impartial. Thus, appellant must be held to have waived his right to object to Juror Reeves as he failed to object to the juror at the time the jury was impaneled. See Fry, 43 Ohio App. at 156. See, also, State v. Myers (C.P.1888), 10 Ohio Dec.Rep. 397, 399.
Furthermore, the subsequent discovery of a disability on the part of a juror or jurors after the case is concluded does not constitute grounds upon which to predicate error. Conrad, 66 Ohio App. at 361-362. Therefore, appellant's claim that he was denied the right to be tried by a fair and impartial jury because Juror Reeves was statutorily ineligible is without merit.
Appellant next argues that he received ineffective assistance of counsel during voir dire. This argument is also without merit because it is barred by res judicata. Res judicata is a proper basis upon which to dismiss a PCR petition without a hearing. State v. Perry (1967),10 Ohio St.2d 175, 179. The doctrine of res judicata applies to constitutional issues that have or could have been raised previously.Id. at paragraph seven of the syllabus. This includes claims of ineffective assistance of counsel. State v. Cole (1982), 2 Ohio St.3d 112, syllabus.
The presentation of competent, relevant, and material evidence outside the record may defeat the application of res judicata. State v. Smith
(1997), 125 Ohio App.3d 342, 348. However, to overcome the res judicata
bar, evidence offered outside the record "must demonstrate that [appellant] could not have appealed the constitutional claim based upon information in the original record." State v. Lawson (1995),103 Ohio App.3d 307, 315, citing State v. Franklin (Jan. 25, 1995), Hamilton App. No. C-930760, unreported, at 7. If the evidence outside the record is "marginally significant and does not advance the petitioner's claim beyond a mere hypothesis and a desire for further discovery," res judicata still applies to bar the claim. Id.
Appellant contends that he could not effectively argue his ineffective assistance of counsel claim addressing the voir dire conducted by trial counsel without an affidavit provided by David L. Doughten, an attorney. Therefore, appellant argues that Doughten's affidavit is evidence outside the record sufficient to immunize his claim from dismissal on the grounds of res judicata.
At the outset, we note that some Ohio appellate courts have held that affidavits of capital defense attorneys or experts reviewing the record of capital cases cannot be considered, as they are not evidence outside the record. See State v. Landrum (Jan. 11, 1999), Ross App. No. 98 CA 2401, unreported; State v. Zuern (Dec. 4, 1991), Hamilton App. Nos. C-900481 and C-910229, unreported. By contrast, this court has considered such affidavits as evidence to support a claim of ineffective assistance of counsel in a postconviction relief proceeding. See Statev. Reeder (Nov. 13, 2000), Clinton App. No. CA00-03-010, unreported. Although this court did not specifically find, as it was not argued, that the affidavit was competent evidence outside the record, it did find that the affidavit, along with three other documents, set forth sufficient operative facts to require an evidentiary hearing. Id. at 7.
The voir dire conducted by appellant's counsel is part of the record; therefore, appellant could have appealed this constitutional claim based upon information in the record. Further, even considering Doughten's affidavit, we find that appellant has failed to demonstrate that his trial counsel breached any essential duty owed to appellant or presented sufficient operative facts to require an evidentiary hearing. The attorney expert's affidavit has the benefit of hindsight, and a "fair assessment of attorney performance requires us to eliminate the distorting effect of hindsight." State v. Post (1987), 32 Ohio St.3d 380,388. The evidence outside the record is only marginally significant and does not advance the petitioner's claim beyond a mere hypothesis and a desire for further discovery. Consequently, res judicata operates to bar the claim.
Appellant next argues that his PCR petition set forth sufficient operative facts to establish substantive grounds for relief based upon other instances of ineffective assistance of counsel. In Ohio, a properly licensed attorney is presumed to be competent. See Vaughn v.Maxwell (1965), 2 Ohio St.2d 299. Accordingly, the defendant bears the burden of proof to demonstrate that he was denied the effective assistance of counsel. Id. Only if the defendant demonstrates that there is a reasonable possibility that, but for counsel's unprofessional errors, the result of the proceedings against the defendant would have been more favorable, will a reviewing court find prejudice. State v.Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus. This probability must be sufficient to undermine confidence in the case's outcome. Id. The effectiveness of counsel must be reviewed in light of the evidence against the defendant, with a "strong presumption that counsel's conduct falls within the wide range of professional assistance." Strickland, 466 U.S. at 689, 104 S.Ct. at 2065. The appellate court must not second-guess trial counsel's strategic decisions. State v. Carter (1995), 72 Ohio St.3d 545, 558.
Appellant maintains that he received ineffective assistance of counsel because the trial court refused to allow trial attorneys to see and analyze portions of Copas' prison record; that he was denied exculpatory, impeaching and mitigating evidence; and that he received ineffective assistance of counsel based upon numerous cumulative prejudicial errors.
When reviewing the impact of decisions made by a trial court on the effectiveness of counsel, "a court should presume * * * that the judge acted according to law." Strickland, 446 U.S. at 694,104 S.Ct. at 2068. Appellant alleges that he was prevented from receiving effective assistance of counsel because the trial court refused to allow trial attorneys to see and analyze Copas' entire Department of Rehabilitation and Corrections ("DRC") file. The court conducted an in camera
inspection of Copas' DRC file and, without objection, certain pages were retained by the court. The retained records of Copas' DRC file contained conduct, incident, and hearing reports. The pages that had a bearing on the guilt phase or mitigation in the penalty phase were released to appellant.
The referenced materials in Copas' file display no connection between Copas and appellant. There is no evidence that appellant had knowledge of incidents in Copas' file, or any contention as to how the contents of the file would provide evidence of provocation in the guilt phase or mitigation in the penalty phase. Therefore, we find the argument to be without merit.
Appellant next argues that exculpatory, impeaching and mitigating evidence was withheld from him. Appellant alleges the incident report of Trooper Ertel, detailing the stabbing, was not furnished to counsel until mid-trial. The record reflects that appellant's trial counsel had the opportunity to review the report over the course of a weekend. Appellant's counsel then moved for, and received, an order for the production of summaries of statements referred to in the report. The court recessed to allow defense counsel time to review the statements. There is no indication that more time was needed or requested.
Appellant argues that there are eleven pages from the Ertel report outside the record, and that these pages are material under Brady v.Maryland (1963), 373 U.S. 83, 83 S.Ct. 1194. Under Brady, suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment. Brady, 373 U.S. at 87, 83 S.Ct. at 1196-1197. Evidence is "material" where its disclosure presents "a reasonable probability that * * * the result of the proceeding would have been different."State v. Aldridge (1997), 120 Ohio App.3d 122,137.
The referenced items would not, to a reasonable probability, have resulted in different findings by the jury. Appellant was able to present his entire account of the events leading up to the stabbing, including his perceived provocation, in his statements made to and related by Trooper Ertel to the jury. The statements of other inmates would be merely cumulative. Therefore, no material evidence was withheld, and consequently, no Brady violation occurred. Thus, this argument has no merit.
Appellant also claims numerous failures by his trial counsel resulted in prejudicial errors. Appellant argues he received ineffective assistance of counsel when his counsel failed to (1) move for a second time that the prosecutors' file be copied and sealed for appellate review; (2) move for a mistrial or continuance to recall witnesses and re-open depositions; (3) point out the inconsistencies in the testimony of the state's medical experts; (4) effectively cross-examine Dr. McWeeney; (5) object when the prosecutor stated "murder one" was the same thing as "prior calculation and design"; and (6) object to the court's definition of "reasonable doubt" when giving jury instructions during the culpability phase.
Pursuant to the doctrine of cumulative error, a conviction will be reversed where the cumulative effect of multiple errors deprives a defendant of his constitutional right to a fair trial, even though each individual error does not constitute cause for reversal. State v.DeMarco (1987), 31 Ohio St.3d 191, paragraph two of the syllabus.
When raised by motion before the Ohio Supreme Court in the underlying case, appellant's request to have information in the prosecutors' file copied and sealed for appellate review was denied. Counsel did not err to the prejudice of appellant by failing to move for a mistrial or a continuance in order to recall witnesses and re-open depositions because the testimony of those witnesses would have been cumulative. Counsel did not err in cross-examining the state's medical experts because this is a matter involving trial tactics. This court will not second-guess trial strategy decisions since "a court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." State v. Mason (1998), 82 Ohio St.3d 144,157-158. Trial counsel did not err when failing to object to the prosecutor's statement that "murder one" was the same thing as "prior calculation and design" because the prosecutor is entitled to some latitude during a summation. Finally, trial counsel did not err by failing to object to the court's definition of "reasonable doubt" when giving jury instructions during the culpability phase because the instruction was quoted directly from R.C. 2901.05.
Since we have not found any instances of prejudicial error, appellant's claim of "cumulative error" is without merit. State v. Garner (1995),74 Ohio St.3d 49, 64; State v. Moreland (1990), 50 Ohio St.3d 58, 69.
Appellant's last argument under the first assignment of error is that his PCR petition should not have been dismissed because it presented sufficient operative facts supported by evidence outside the record that electrocution and lethal injection are cruel and unusual forms of punishment. On November 21, 2001, the Governor of Ohio signed Am.H.B. No. 362 which eliminates electrocution as an option for the execution of death sentence. Therefore, any person who has been sentenced to death must be executed by lethal injection. The Ohio Supreme Court has upheld the use of lethal injection, noting that no case law, federal or state, has held that method constitutes cruel and unusual punishment. State v.Carter (2000), 89 Ohio St.3d 593, 608.
In sum, appellant's PCR petition failed to demonstrate a cognizable claim of constitutional error that resulted in prejudice. Consequently, the trial court did not act unreasonably, arbitrarily, or unconscionably by denying appellant's PCR petition without a hearing. The first assignment of error is overruled.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED BY FAILING TO PROVIDE AN EFFECTIVE REMEDY.
Appellant argues that when a petitioner has the burden of supporting grounds for relief with evidence outside the record, but is not granted discovery, and his PCR petition is summarily dismissed without a hearing, postconviction relief fails to provide an effective remedy.
The Ohio Supreme Court has held that the statutory procedure for postconviction relief constitutes "the best method of protecting constitutional rights of individuals and, at the same time, providing a more orderly method of hearing such matters." Freeman v. Maxwell (1965),4 Ohio St.2d 4, 6. Consequently, we do not share appellant's rather dismal opinion of the efficacy of the postconviction system. There are instances where postconviction relief is appropriate. See State v.Wilson (1995), 73 Ohio St.3d 40; State v. Byrd (1980), 63 Ohio St.2d 288;State v. Cannaday (Oct. 8, 1991), Franklin App. No. 91AP-474, unreported. These cases demonstrate that a petitioner's chance of success depends more on the merit of his claim than on the procedural obstacles he faces. Because the statutory procedure for postconviction relief constitutes an effective remedy, the second assignment of error is overruled.
Assignment of Error No. 3:
 THE TRIAL COURT ERRED BY FAILING TO RECOGNIZE THAT THE CUMULATIVE ERRORS SET FORTH IN APPELLANT'S SUBSTANTIVE GROUNDS FOR RELIEF MERIT REVERSAL OR REMAND FOR A PROPER POSTCONVICTION PROCESS.
Appellant lastly argues that if the court determines that there were instances of prejudicial error in this case, then it must determine the cumulative effect of these errors. Since we have not found any instances of prejudicial error, appellant's claim of "cumulative error" is without merit. See Garner, 74 Ohio St.3d at 64. Therefore, the third assignment of error is overruled.
Judgment affirmed.
YOUNG, P.J., and POWELL, J., concur.