**Arvil SARGENT, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

No. A–17701.

Court of Criminal Appeals of Oklahoma.
April 13, 1973.
Rehearing Denied May 1, 1973.

Donald M. Stevenson, Idabel, for appellant.

Larry Derryberry, Atty. Gen., Michael Cauthron, Asst. Atty. Gen., for appellee.

## OPINION

BRETT, Judge:

Appellant, Arvil Sargent, hereinafter referred to as defendant, was charged with the crime of murder and was tried and convicted in the District Court of McCurtain County, Case No. CRF–17–189, for the crime of manslaughter in the first degree. He was sentenced to serve a term of 20 years in the State Penitentiary in accordance with the verdict of the jury, and a timely appeal has been perfected to this Court.

Briefly stated the facts are: On Saturday, November 20, 1971, at about 7:00 or 7:30 P.M., the defendant, with his eight year old son, was proceeding east on Johnny Beaver's Trail, a narrow road about nine feet wide, leading to Broken Bow Reservoir, about 21 miles north of Broken Bow. The defendant was returning to his hunting camp which was located close to the lake. At a point about four miles from Highway 259, on Johnny Beaver's Trail, the defendant came upon two pickups. Testimony is in conflict whether the trucks were blocking the road or parked along side of it.

Carson Steele testified that he was going west on the trail in his pickup, coming from his camp, when he met the deceased, Johnny Highfill, Jr., going east on the trail in his pickup. They stopped on the trail and visited.

Here the testimony as to what happened is in conflict. Mr. Steele testified that the defendant came upon the two stopped vehicles, and that Mr. Steele moved his truck so that the defendant could get by. He testified that the defendant cursed both Mr. Highfill and himself, and that the defendant then asked the deceased if he was Joe Prince (the deceased was an employee of Prince and was driving a pickup with the name "Joe Prince" printed on it). The deceased answered "no"; Mr. Steele testified that he then heard a shot, and that he saw the deceased fall.

The defendant, on the other hand, testified that when he came upon the pickups they were in such a position in the road that he was unable to get past them. Defendant testified that he asked the men to move their trucks and that in reply they cursed and threatened him. Defendant testified that the deceased went to his pickup as if to get something, and that the defendant was afraid for his own and his son's lives, so he took down his rifle which was hanging in the rear window of his pickup, and pointed it in the deceased's direction. The deceased turned away from the defendant and defendant testified that

his attention was diverted from Highfill and the next thing he knew the rifle went off accidentally. Defendant testified that he saw the deceased "duck down as if to get out of the line of fire."

At this point Mr. Steele left to call for help. According to defendant, Mr. Steele was unaware that the deceased had been hit; so he also left to go on to his camp. When defendant reached the campsite, his son told him that the deceased was lying on the ground beside his pickup.

The defendant then broke camp, but remained at the campsite for about one and a half to two hours. He and his son then proceeded back down Johnny Beaver's Trail toward Highway 259 and the scene of the shooting.

In the meantime, three hunters, W. E. Lawson, Harold Higgins, and Thomas Godwin, had arrived at the scene and discovered Highfill lying in the road. They testified that he was still alive and that they called for help and directed the sheriff and the ambulance to the scene. After the ambulance left, they proceeded east on the trail toward their camp. Further up the road they met the defendant coming west on the trail, pulling his trailer. They stopped and defendant asked what the condition of the road was ahead. They replied that it was OK and the defendant proceeded west.

When he passed the scene where the shooting had occurred, the deceased had been removed and a wrecker was moving the deceased's pickup. At a point about one and one half miles down the road, the defendant stopped to talk to Undersheriff Williston and asked what the trouble was. Williston told him that there had been a shooting, and that they did not know who did it. Defendant asked if they needed to talk to him and Williston replied no. Defendant was later arrested by Sheriff Charlie Hudgins on Highway 259, about twelve miles north of Broken Bow, and was taken to the sheriff's office.

Defendant's propositions of error will be considered out of the numerical sequence listed in his brief, but each will be identified by his numerical designation.

■ Defendant's third proposition asserts that the court erred in not sustaining defendant's motion to quash the jury panel, because the prosecutor entered an oral objection and exception to defendant's written motion. Defendant bases his contention on the provisions of 22 O.S. 1971, § 635, but offers no other supporting authorities. Unless the proposition of error is supported by proper authority, this Court will not consider the same. See: McGee v. State, Okl.Cr., 402 P.2d 921 (1965).

Defendant's fourth proposition of error is that he was denied his right to have a jury selected in accordance with the laws of Oklahoma, because the jury panel was not selected in compliance with 38 O.S. 1971, §§ 18 and 33.

38 O.S. 1971, § 18, provides in pertinent part:

". . . select from the list of qualified jurors, as prescribed by this chapter, of such county as shown by the tax lists in County Assessor's office for the current year . . ."

38 O.S. 1971, § 33, provides:

"For the purpose of ascertaining the names of all persons qualified for jury service, it hereby is made the duty of the County Assessor of each county to cause to be provided, on the forms for the listing of real and personal property for taxation, space for the taxpayer to list thereon, his age, name and age of spouse and actual place of residence, and in addition thereto and on the forms for the listing of personal property for taxation, space for the taxpayer to list thereon the name and sex of his/or her spouse, if said spouse is a citizen of the United States, is over the age of twenty-one (21) years, has resided in the State one (1) year, and in the county six (6) months, and is not a listed taxpayer. Said space shall be plainly labelled: 'For Jury Purposes Only. Listing of such names hereunder has no other purpose.' It shall be the duty of the County Asses-

sor to endeavor to have the taxpayer fill in such information on the said forms; and, if each case where the County Assessor shall assess any real or personal property to any taxpayer when the taxpayer has omitted to list the information herein required, the County Assessor shall, to the best of his ability, ascertain and list the aforesaid information as to the spouse of the taxpayer. All names, and the addresses of the persons so named, shall be available thereafter for selection for jury service in the same manner as persons shown upon the tax lists in the Assessor's office."

Defendant asserts error was committed because the form used was labeled, "Listed, Jury Duty Only," rather than "For Jury Purposes Only," which he alleges constituted a material departure from the statutes.

■ The label used provides the same meaning as the words provided by statute. Failure to use the exact words of the statutes—as in this case—is not reversible error. The meaning conveyed to anyone reading them is the same as that which would be conveyed by reading the statutory label. We find the deviation not to be material, and therefore, not fatal.

■ Defendant next contends under this proposition that the tax assessor did not, to the best of her ability, ascertain the information as to the spouse of the taxpayer as required by 38 O.S. 1971, § 33; however, defendant fails to show he was prejudiced by this procedure, even though the procedure was not in strict compliance with the statutes. See: Porter v. District Court of Oklahoma County, Okl.Cr. 462 P.2d 338 (1969), and Stevenson v. State, Okl.Cr., 486 P.2d 646 (1971).

Defendant's last contention under this proposition is, that because only two of the five available books containing names of taxpayers were used to select the jury panel, error was committed.

■ Defendant was charged with murder, yet he was convicted of manslaughter in the first degree and sentenced to twenty years confinement in the State Penitentiary. The jury's failure to inflict the maximum penalty sought, or even the maximum penalty authorized for manslaughter in the first degree, does not indicate prejudice. Therefore, this contention is denied.

Defendant's fifth proposition of error asserts that the court failed to properly admonish the jury in compliance with 22 O.S. 1971, § 854, before the first recess, and therefore, defendant alleges he was denied his right to a fair and impartial trial.

Shortly before the jury was empaneled the court took a fifteen minute recess and admonished the jury as follows:

"Gentlemen of the jury, we will take a few minutes recess, now, to kinda rest. And since the matter has not yet been submitted to you, don't discuss the case amount [sic] yourvelves, [sic] and since you will be in the jury room, you won't be exposed to anyone else. Go with your bailiff, now, to the jury room, and we will call you back in just a few minutes, when we are ready to begin."

In the case of Rutherford v. State, 95 Okl.Cr. 311, 245 P.2d 96 (1952), a jury was allowed to recess in the halls with no admonition. This Court found that in light of previous admonitions to the jury, and evidence of an otherwise fair trial, the fact that no admonition was given on that one occasion was not grounds for reversal.

■ Under the facts of this case, and in light of the admonition given the jury, considered with the fact that the jury was confined to the jury room during the entire length of the recess, we find the court's admonition to have been sufficient. We therefore deny defendant's fifth numbered proposition of error.

Defendant's first numbered proposition asserts that the trial court erred in not properly instructing the jury on defendant's theory of defense by refusing to give the following instruction requested by defendant:

"You are instructed that if the killing of a party intended to be killed would under

all circumstances have been excusable or justifiable homicide on the theory of self-defense, then if the person killed was killed by an unintended or accidental shooting in the proper exercise of such self-defense, such shooting is also excusable or justifiable."

Defendant cites York v. State, Okl.Cr., 449 P.2d 927 (1969), as authority for the proposition that the defendant is entitled to have the jury instructed as to his theory of defense which the evidence would tend to show. We held in *York,* however, that even though the defendant's specific instruction was not given, if the theory of his defense was covered when the instructions which were given were read as a whole, the instructions were sufficient.

In the instant case, the court instructed the jury that homicide is excusable when committed by accident, among other things, on sudden provocation. The court in separate instructions advised the jury that homicide is justifiable when committed in self defense. See also: Cole v. State, 34 Okl.Cr. 366, 246 P. 653 (1926), and Jordan v. State, Okl.Cr., 327 P.2d 708 (1958).

■ The instructions which were given adequately covered the law involved in the defendant's theory of defense. The refusal by the trial court to give that particular requested instruction does not constitute grounds for reversal in this case.

The defendant's second numbered proposition of error contends that the court erred by refusing to give defendant's requested instruction on manslaughter in the second degree. We do not agree.

21 O.S. § 716 (1971) provides:

"Every killing of one human being by the act, procurement or culpable negligence of another, which, under the provisions of this chapter, is not murder, nor manslaughter in the first degree, nor excusable nor justifiable homicide, is manslaughter in the second degree."

■ We have held that where the evidence tends to show a lesser degree of the crime the jury should be instructed on it. Atchison v. State, 3 Okl.Cr. 295, 105 P. 387 (1909), Kent v. State, 8 Okl.Cr. 188, 126 P. 1040 (1912).

In the instant case, the State's evidence if believed, tended to prove murder under 21 O.S. 1971, § 701, while the defendant's evidence, if believed, tended to prove either excusable homicide under 21 O.S. 1971, § 731, or justifiable homicide under 21 O.S. 1971, § 733.

■ Where the evidence presented tended to show either murder or some form of excusable or justifiable homicide, it is not error to refuse to give an instruction on manslaughter in the second degree where there is no evidence tending to support a finding of that crime. Lowrey v. State, 87 Okl.Cr. 313, 197 P.2d 637 (1948), Ballard v. State, 12 Okl.Cr. 277, 154 P. 1197 (1916), Humphrey v. State, 11 Okl.Cr. 287, 146 P. 230 (1915). Such evidence is not present in this case. Therefore, it was not error for the court to refuse defendant's requested instruction on manslaughter in the second degree.

Defendant's seventh numbered proposition asserts that the trial court committed error in permitting improper closing remarks by the prosecuting attorney. The defense counsel however failed to object to the remarks at the time they were made and failed to ask the court to admonish the jury to disregard the remarks. This objection was raised for the first time on motion for new trial.

We have held repeatedly that improper argument must be objected to and a motion to strike from consideration of the jury must be made, in order to preserve the error for appeal, unless the error is so severe that it could not be cured. Otherwise, it is not sufficient to raise such an alleged error for the first time in a motion for new trial. Sweet v. State, 70 Okl.Cr. 443, 107 P.2d 817 (1940); Pitts v. State, Okl.Cr., 431 P.2d 449 (1966); Robison v. State, Okl.Cr., 430 P.2d 814 (1967); Byrnes v. State, Okl.Cr., 451 P.2d 19 (1969); McFay v. State, Okl.Cr., 498 P.2d 418 (1972).

In this trial there was no timely objection made to the prosecutor's argument; therefore, no error was properly preserved for appeal and defendant's contention is without merit.

Defendant's sixth numbered proposition is that he was denied a fair trial because the court failed to exercise control over the trial. The incident which prompted this contention arose after the case was given to the jury. A noon recess was called and when the jury returned at 1:15 p. m. the court had not yet returned. The jury went into the jury room and the court returned at 1:35 p. m. with the jury still in the jury room. Defendant at this time made a timely objection and moved for a mistrial which was overruled.

The defendant cites numerous cases which say that the judge must be present at each stage of the trial. Raab v. State, 62 Okl.Cr. 361, 71 P.2d 773 (1937); Cochran v. State, 4 Okl.Cr. 379, 111 P. 974 (1910); Ridenour v. State, 94 Okl.Cr. 92, 231 P.2d 395 (1951); Stites v. State, 9 Okl.Cr. 596, 132 P. 822 (1913). These cases are clearly distinguishable from the case at bar.

In Raab v. State, supra, the court left the county and went home leaving the jury in deliberation. In Cochran v. State, supra, the judge left the courtroom and let the trial proceed without him, while in Ridenour v. State, supra, the judge went to his chambers and allowed closing arguments to proceed for one and one-half hours without him being present. In Stites v. State, supra, the judge left during closing arguments and went to the clerk's office to transact other business. These situations are clearly not the same as is that involved in the instant case.

In this case, the judge was not in the court when the jury returned from lunch. As this Court said in Raab v. State, supra,

"He [the judge] may make a recess, or adjourn as to all other business from day to day, or for rest or refreshment, but he cannot suspend the functions of the court as to the case of which the jury are deliberating. He need not remain actually on the bench or in the court room, but he must remain where he may exercise his functions as a court; that is, at the place where the court is by law required to be held."

We believe that the court did not lose control of the trial within the meaning of the previously cited cases merely because the jury arrived back from lunch before the judge did. The record must affirmatively show that the error complained of was of sufficient character to show that the defendant was not given a fair trial. Blagg v. State, 36 Okl.Cr. 337, 254 P. 506 (1927). Such irregularity did not exist in the instant case. Therefore, defendant's proposition is without merit.

Defendant's eighth and final proposition of error is that the trial court erred in its failure to sustain defendant's motion for deferred sentence and motion for suspended sentence. 22 O.S. 1971, § 991a provides:

"Whenever a person is convicted of a crime and no death sentence is imposed, the court shall either: (1) Suspend the execution of sentence in whole or in part, with or without probation, or (2) Impose a fine prescribed by law for the offense, with or without probation or commitment, or (3) Commit such person for confinement provided for by law. . . ."

We have held before that the question of whether a probation or a suspended sentence is granted is a matter of discretion with the trial court and in the absence of an abuse of that discretion the trial court's ruling will not be overturned. Ramsey v. State, Okl.Cr., 473 P.2d 305 (1970); Hamilton v. State, Okl.Cr., 481 P.2d 471 (1971).

We find no such abuse of discretion in the case at bar. Therefore, the trial court's ruling must stand. Nonetheless, defendant is not precluded from again submitting this application to the trial court under the provisions of 22 O.S. 1971, § 994.

For the above stated reasons we find that the judgment and sentence in Case No. CRF–71–189, in the District Court of McCurtain County, should be affirmed.

It is so ordered.

BLISS, P. J., and BUSSEY, J., concur.