519 P.2d 33

**The STATE of Arizona, Appellee,**

v.

**Laydonia JAMES, Appellant.**

**No. 2661.**

Supreme Court of Arizona,
In Division.

Feb. 26, 1974.

Rehearing Denied March 19, 1974.

Gary K. Nelson, Atty. Gen. by Thomas A. Jacobs, Asst. Atty. Gen., Phoenix, for appellee.

Wood, Platt & Jenson, P. C. by Dennis D. Jenson, Coolidge, for appellant.

CAMERON, Vice Chief Justice.

This is an appeal from a jury verdict and judgment of guilt to the crime of voluntary manslaughter, §§ 13–455, 13–456 and 13–457 A.R.S.

We are asked to answer two questions on appeal:

1.  Was there sufficient evidence to support an instruction to the jury on the crime of voluntary manslaughter?

2.  Was it error for the trial court to direct the courtroom clerk to receive the verdict in the absence of the judge?

The facts necessary for a determination of this matter on appeal are as follows. In the early evening of 6 August 1972, the defendant entered a bar known as the "Cozy Spot Bar" located in Casa Grande, Arizona. The defendant approached the victim, John L. Miles, who was sitting on a bar stool at the end of the bar. Although controverted by the defendant, two witnesses testified that the defendant reached around the victim Miles and pulled him backwards

to a position where Miles was still sitting on the bar stool, but his back was nearly touching the other bar stool to the side of him. The victim jerked away and told the defendant not to do that, as he didn't like it. Further discussion ensued and the defendant told Miles, in effect, "if you have your gun pull it," and Miles responded that he had his gun and took it out of his left pocket. At or about this time, the defendant pulled his gun and shot the victim Miles who was pronounced dead upon arrival at Hoemako Hospital.

At the trial the defendant claimed that the shooting was in self-defense. In addition to an instruction on second degree murder, an instruction on voluntary manslaughter was given over defendant's objection.

From the verdict and judgment of guilt the defendant appeals.

## WAS THE INSTRUCTION ON VOLUNTARY MANSLAUGHTER PROPER?

■ It is the contention of the defendant that he was either guilty of second degree murder or nothing, and that by giving an instruction on voluntary manslaughter, which he contends was not supported by the evidence, the jury reached a compromise verdict of guilty to voluntary manslaughter instead of not guilty. We have stated:

> "* * * In a homicide case, it is the duty of the trial judge to instruct the jury on every grade of offense the evidence tends to show defendant guilty of, and conversely, refuse to instruct as to other grades of the offense, of which the evidence shows he could not be guilty. * * *" State v. Prewitt, 104 Ariz. 326, 332, 452 P.2d 500, 506 (1969).

Manslaughter is defined as follows:

> "Manslaughter is the unlawful killing of a human being without malice." § 13-455 A.R.S.

And:

> "A. Manslaughter is of three kinds:
>
> "1. Voluntary, upon a sudden quarrel or heat of passion." § 13-456(A)(1) A.R.S.

In the instant case, witnesses testified that the defendant was questioning the victim concerning a shooting that occurred the night before in which the victim in this case, John L. Miles, was supposed to have been the man who did the shooting. Elmo Warren, a patron of the bar, testified as follows:

> "Q  Okay. Now tell us what you heard. What type of argument?
>
> "A  Well, I heard an argument. I couldn't understand it at first but then just before the shot then I heard him tell him that he had shot this other dude, why not shoot him.
>
> "Q  Go a little slower again so we can get this clarified.
>
> "A  Well, I heard some words being said, an argument.
>
> "Q  Exactly what were the words that you heard, Elmo?
>
> "A  Well, I didn't understand the first part.
>
> "Q  And then who said, 'You shot a dude'?
>
> "A  James did.
>
> "Q  Tell us exactly what he said.
>
> "A  Well, he was telling him that he had shot this dude the night before that, why didn't he shoot him now.
>
> "Q  And then what happened?
>
> "A  Then there was a tussle.
>
> "Q  When you refer to a tussle, would you describe that, please, so that we can understand.
>
> "A  Well, James had grabbed him and had him lay down on two stools and he wiggled out from under him and stood up with his back toward me.
>
> "Q  Then what happened?
>
> "A  Then I heard a shot.

"Q You heard the shot?

"A Yes."

And the defendant testified:

"So I walked up to John Miles. I said, 'John, what's happening to the dude you shot?' And he told me. He says, he said, 'I don't know. In fact, I don't give a damn.' That's the word he spoke to me. And so one word to another just like I asked him. I said, 'John, what's wrong with you?' He said, 'Don't come up here bull-shitting because I don't want to be fooled with,' just like that. I said, 'Oh, John, there is something wrong with you, man.' So he said, 'I guess you want to be like your friend.' And so I didn't said nothing. So I turned around and said, 'Well, fuck you,' you know, just like that. So I was moving back. He said, 'You got your shit? You been taking it?' So I didn't still said nothing. So as I turned slightly to my left and moved back from him and that's when he said, 'I got mine.' And so that's when he coming out with it."

A part-time waitress testified as follows:

"Q * * * Would you tell the Court and jury please what you heard by way of conversation between these two persons.

"A Well, John L. was sitting on this stool kind of sideways to the bar and Laydonia—

"Q (Interposing) You also refer to him as Shep; is that correct?

"A Yes. Laydonia walks up behind him and he grabs him by the neck and he takes him backwards. So John L. breaks away from him.

"Q What do you mean 'takes him backwards'?

"A He grabs him and takes him backwards on the stool.

"Q Pulls him back?

"A Yes. And then John L. tells him to leave him alone because he don't play that stuff. So Laydonia says, 'If you got your shit, pull your shit.'

*   *   *   *   *   *

"Q Okay.

"A So John L. says, 'I got it, man, right here.' And so that's when John L. comes out with his gun in his left hand from the left pocket, like this (indicating). And so then Shep comes out and shoots him."

We believe that there is sufficient evidence from which the judge could instruct, and the jury could find, the defendant guilty of voluntary manslaughter. We find no error.

## PRESENCE OF THE TRIAL JUDGE WHEN THE VERDICT WAS RECEIVED

■ At the close of the trial and after the submission of the case to the jury, the judge, without objection by the parties, directed that the courtroom clerk was to take the verdict in his absence. The minute entry reads as follows:

"When jurors have reached a verdict, IT IS ORDERED directing the Courtroom Clerk to take the verdict."

We have no reporter's transcript of these proceedings. In their briefs, however, the parties agree that the judge was not present to receive the verdict. The Rules of Criminal Procedure in effect at the time of this trial contemplated the presence of the judge at the time the verdict was received and read. Rule 283 of the Rules of Criminal Procedure, 17 A.R. S., provided that "the foreman shall return the verdict to the court" and the court's presence is clearly required. Rule 289 did provide for a sealed verdict "during a temporary adjournment of the court," but this procedure was not utilized in the instant case. It was error for the court to absent himself from the courtroom when the verdict was returned. Some jurisdictions have held that this unauthorized absence voids the verdict. For example (based upon a specific statute):

"The verdict of the jury was taken by the court clerk in the absence of the trial judge and was, for that reason, void, en-

titling defendant to a new trial. * * *" People v. Simon, 324 Mich. 450, 457, 36 N.W.2d 734, 737 (1949).

And our Court of Appeals has stated:

"Although at times the above rules may prove inconvenient to the trial court judge, it is nonetheless his duty, upon undertaking to preside at a criminal trial, to remain in control of the cause until final disposition. * * *" State v. Jones, 6 Ariz.App. 26, 28, 429 P.2d 518, 520 (1967).

Other courts have held, however, that even if error, the question is whether the judge's absence resulted in loss of control of the trial or prejudice to the defendant:

"In other words, it is not the absence of the judge, but rather a prejudicial occurrence during his absence that may create error, at least when the judge's absence is with the consent of counsel. * * *" State v. Eberhardt, 320 Ohio Misc. 39, 282 N.E.2d 62, 64 (1972).

And:

"We believe that the court did not lose control of the trial within the meaning of the previously cited cases merely because the jury arrived back from lunch before the judge did. The record must affirmatively show that the error complained of was of sufficient character to show that the defendant was not given a fair trial. * * *" Sargent v. State (Okl.Cr.), 509 P.2d 143, 148 (1973).

Rule 305 of the Rules of Criminal Procedure in effect at the time this matter was tried would indicate an approval of the requirement of prejudice concerning the absence of the judge when receiving a verdict:

"No irregularity in the rendition, reception or recording of the verdict shall affect its validity unless the defendant was in fact prejudiced by such irregularity."

Rule 305, Rules of Criminal Procedure, 17 A.R.S. (1956).

In the instant case, while we do not approve of the procedure followed by the trial judge, there is no showing that the error was prejudicial.

## THE SENTENCE

■ In a criminal case, we are required to review the record for error, § 13–1715 A.R.S. and State v. Burrell, 96 Ariz. 233, 393 P.2d 921 (1964).

■■ In the instant case, we note that the minute entry on sentencing is defective in that it does not indicate the time the defendant is to serve in the Arizona State Prison. The entry merely reads:

"* * * you shall be punished by imprisonment at the Arizona State Prison at Florence, Arizona; said sentence to date from September 30, 1972; * * *"

The formal written judgment does provide for a sentence of not less than five nor more than seven years in the Arizona State Prison. There is no reporter's transcript of the sentencing before this court.

In a criminal case a sentence is complete and valid when orally pronounced in open court and entered in the minutes without anything further or any written judgment. Willmon v. State ex rel. Eyman, 16 Ariz. App. 323, 493 P.2d 125 (1972); State v. Johnson, 108 Ariz. 116, 493 P.2d 498 (1972). Because the minute entry does not reflect the range of sentence, the matter will have to be remanded to the trial court for resentencing pursuant to State v. Jefferson, 108 Ariz. 600, 503 P.2d 942 (1972), and State v. Denson, 110 Ariz. 159, 515 P. 2d 1179 (1973).

Judgment affirmed. Remanded for resentencing.

STRUCKMEYER and HOLOHAN, JJ., concur.