Robert Lynn MOORE, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–76–486.

Court of Criminal Appeals of Oklahoma.

Jan. 11, 1977.

J. David Rambo, Norman, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Toby Mash, Legal Intern, for appellee.

## OPINION

BLISS, Judge:

The Appellant, Robert Lynn Moore, hereinafter referred to as defendant, was charged with Second Degree Murder in the District Court of Cleveland County, Oklahoma, Case No. CRF–75–489. The defendant was tried before a jury and convicted of the lesser included offense of Manslaughter in the First Degree. Punishment was assessed at a term of ten (10) years in the state penitentiary. On the 15th day of January, 1976, a judgment and sentence was entered sentencing the defendant to a term of ten (10) years under the direction and control of the Department of Corrections of the State of Oklahoma, the defendant to serve the first five (5) years with the remainder of said sentence being suspended under terms and conditions of probation pursuant to the provisions of 22 O.S. § 991a. From said judgment and sentence the defendant has perfected his timely appeal.

Briefly stated, the evidence adduced at trial is as follows: Norman Police Officer Mark Boyd testified that at approximately 3:05 A. M. on the morning of September 21, 1975, he and other officers went to a Norman residence to investigate a possible gun shot. Upon arriving the officers received no response and subsequently received permission from the owner to forcibly enter the home where they found the body of the deceased with a large wound just behind the left ear. In the kitchen Boyd found a hand written note which stated, "It was an accident. He burned me. Bob."

Wendell Swartz then testified that he was the brother of the decedent Boyd Swartz, that he last saw his brother about midnight on the evening in question and that he appeared to be in a good mood. Swartz further testified that his brother had owed the defendant approximately $340.00 for three to four weeks prior to the shooting.

Lynda Jacobs then testified that she and her husband had known the defendant for a long period of time and that on the evening of the 20th she and her husband went to the defendant's home to eat and spend the evening watching television and listening to music. At approximately 11:30 P.M. the decedent arrived. He and the defendant were laughing and talking and appeared to be a little drunk. The witness then dozed off and awoke a few times to hear her husband, the defendant and the decedent laughing and talking. She subsequently went back to sleep and then awoke to a loud noise. She and her husband immediately left but she forgot her purse. Upon returning to the house the defendant told her, "Get out of here, I've killed him, I'm sorry, I must have gone crazy."

The state then called Dr. Charles Edward Marshall, a consultant forensic pathologist with the office of the Chief Medical Examiner of the State of Oklahoma. Dr. Marshall testified that he examined the body of the decedent on September 21, 1975, and conducted an autopsy. Based upon said autopsy and examination of the body it was his opinion that the cause of death was a gun shot wound to the head. He further stated that the wound did not appear to be a "suicidal wound".

Jimmy Jacobs then testified that on the afternoon of the 20th he went to the defendant's home to watch a football game on

television. At approximately 6:00 P.M. they went to a liquor store run by the decedent's girl friend. While at the liquor store the witness observed a conversation between the defendant and the decedent. Although he did not hear the conversation he stated that the defendant raised his voice on one occasion. The witness further stated that the defendant owned a .45 caliber Colt revolver and a .22 Ruger pistol which he usually kept unloaded because of his children. The remainder of his testimony was essentially the same as his wife's, the witness stating that he also dozed off and awoke to a gunshot. When he awoke the defendant was sitting in a chair approximately 10 or 12 feet away from where the decedent was sitting. The defendant had a gun in his hand and was looking back into the cylinder. Jacobs grabbed his wife and they ran out the back door, the wife returning to get her purse. On his way out Jacobs looked back and saw the decedent lying back on the couch with his head slightly turned. On cross-examination the witness stated that the decedent and the defendant appeared to be on very friendly terms that evening.

The State then called Detective Myles Houseberg, who testified that while investigating the homicide he found a spent .45 caliber cartridge on the kitchen floor. He further stated that on the 22nd he went to Tucumcari, New Mexico, to arrest the defendant on a murder warrant. At that time the Tucumcari Police gave him a .45 Colt single action revolver. While in Tucumcari the defendant was advised of his Miranda rights and then told Detective Houseberg that the shooting was an accident and that he was sorry. The defendant further stated that on the 20th the Jacobs came over to his house to visit and that around 6:00 P.M. he and Jacobs went to a liquor store to get more beer. There they met the decedent. The defendant had owed him some money. The defendant further stated that the decedent arrived at his home around 10:30 P.M. and went to sleep on the couch because he had been using some "smack", and that he did not remember how he got the revolver that evening

since he usually kept it in the bedroom. Houseberg further stated that the gun was a single action pistol and that the hammer would have to be almost fully cocked before the gun would fire. The State then rested and the defendant presented no evidence.

██ The defendant's first assignment of error urges that the trial court erred in not permitting inquiry of the medical examiner concerning the level of morphine found in the decedent's body. In support of his argument the defendant contends that he was thereby effectively prohibited from exploring all avenues of defense concerning a possible alternative cause of death. The record reflects that prior to Dr. Marshall's testimony the defendant raised the issue by objecting to the trial court's apparent ruling that no such testimony would be admitted. However, the record does not reflect that the defendant made any offer of proof in support of his contention that the doctor would testify as to a high morphine content. In *McGaha v. State*, Okl.Cr., 492 P.2d 1101, this Court held that it is the duty of the defendant to present on appeal enough of the record to allow review of the error. There is nothing in the record to indicate that the medical examiner or any reports would in fact reveal that there was a high morphine content in the decedent's body. It should also be noted that the alleged error was not specifically urged or argued in the defendant's motion for new trial and was not raised in the Petition in Error. *Pierce v. State*, Okl.Cr., 491 P.2d 335. It should also be noted that the record does reflect that Dr. Marshall testified that he conducted "an autopsy postmortem examination to examine a bullet tract of the head and also internal viscera for other contributory disease processes" and that based upon his examination the cause of death was a gun shot wound to the head. Therefore, it is apparent that it was Dr. Marshall's opinion after a thorough examination that the cause of death was the head wound. For all reasons stated above the defendant's first assignment of error is without merit.

██ Defendant's second assignment of error urges that the trial court erred in

submitting the cause to the jury at 9:40 P.M. after a day long trial thereby prejudicing the right of the defendant to have his guilt or innocence determined in an atmosphere conducive to deliberations free from the influence of fatigue. An examination of the record does not indicate the time the cause was submitted to the jury and further fails to reflect any objection by the defendant. In *Bingham v. State*, 82 Okl.Cr. 5, 165 P.2d 646, this Court held that the time of convening and recessing court is ordinarily a matter resting in the sound discretion of the trial judge and the action of the trial court in holding a night session of court will not be considered improper unless there is a clear showing that the defendant was prejudiced by such actions. In the instant case there is no showing of any prejudice. The defendant failed to object, thereby failing to bring the question to the attention of the trial court, and there was no evidence presented in the record to indicate that the jury was in fact fatigued. Defense counsel was in a position to ascertain the weariness of the jury at the time the cause was submitted and, failing to object, has waived any possible error. Said assignment of error is without merit.

The defendant's last assignment of error contends that the trial court committed reversible error in failing to submit an instruction on Manslaughter in the Second Degree. Again, the record indicates that the defendant failed to request an instruction on Manslaughter in the Second Degree and it is apparent from defendant's cross-examination of the State's witnesses and his closing argument that his defense was one of accident.

In *Sargent v. State*, Okl.Cr., 509 P.2d 143, this Court held that where the evidence presented tended to show either murder or some form of excusable homicide, it is not error to refuse to give an instruction on Manslaughter in the Second Degree. In the instant case the trial court properly instructed the jury on the defense of excusable homicide committed by accident and misfortune as requested by the defendant. No evidence was presented which would justify the submission of an instruction on Manslaughter in the Second Degree and the defendant's final assignment of error is also without merit.

After a thorough examination of the record before us it is our opinion that the defendant received a fair and impartial trial before a jury, that no material right of the defendant was prejudiced and that the judgment and sentence appealed from should be, and the same is hereby *AFFIRMED*.

BRETT, P. J., and BUSSEY, J., concur.