**STATE, Plaintiff-Appellee, v. YOUNG, Defendant-Appellant.**

Ohio Appeals, Second District, Clark County.

No. 460. Decided December 18, 1946.

Glenn E. Detling, Prosecuting Attorney, Springfield; Simon L. Leis, Cincinnati; Homer C. Corry, Springfield; Stewart L. Tatum, Springfield, for Plaintiff-Appellee.

Mason Douglass, Dayton, David Carter, Springfield, for Defendant-Appellant.

## OPINION

By MILLER, J.:

This is an appeal on questions of law from the Court of Common Pleas of Clark County, Ohio. The parties will be referred to as they appeared in the Common Pleas Court, where the defendant-appellant was the defendant and the plaintiff-appellee was the plaintiff.

The defendant was jointly indicted with one William E. DeWitt and was charged with the receiving of a bribe with intent to influence him with respect to his official duties as Sheriff of Clark County.

The record discloses that the defendant herein was elected Sheriff of Clark County for the term beginning January 1, 1941; that William E. DeWitt was a friend of long standing and acted as the defendant's campaign manager; and that during the course of the campaign he arranged to meet Leonard F. Donahue, who was one of the owners of a gambling place then in operation within the county and known as the Red Brick Tavern. The first meeting of DeWitt with Donahue was in the presence of Norman Evilsizer whom DeWitt had asked to make the introduction. After this was done DeWitt told Evilsizer to go for a walk while he talked with Donahue. This conversation lasted for about one-half an hour. Donahue testified that arrangements were made to meet the defendant on a lonely country road at which time he gave the defendant the sum of fifty dollars as a contribution to his campaign fund. He says he asked the defendant if he would be allowed to operate in case of his election, and the defendant said that he thought it could be arranged. After the defendant was elected Donahue called him on the phone and asked for an appointment to see him, but was told to see DeWitt. He told the defendant at that time that he wanted to talk about gambling activities. In accordance with the defendant's instructions Donahue and his partner, Mr. Marshall, called on DeWitt at his home, where arrangements were made to pay him $150.00 per month in order to operate the gambling establishment. Later the business was checked by Mr. George Thompson and it was increased to $200.00 per month. These payments were made monthly to DeWitt who told them he was giving the money to the defendant. On occasions when the payments were late, DeWitt told Donahue that the defendant did not like it.

After several months of operation DeWitt asked Donahue to put out a large light that he kept burning in the back of the Red Brick Tavern. After operating the Red Brick Tavern for some time a complaint containing numerous signatures was filed with the defendant; the place was raided, but no arrests were made. DeWitt told him to move to another location in the county, which he did, and the payments were continued. Business was evidently not satisfactory at the new location and DeWitt was asked for permission to move back to the Red Brick Tavern and he said, "Not yet." He did, however, move back at a later date to the Red Brick Tavern without obtaining permission of DeWitt, and as a result the

place was raided by the deputy sheriffs of Clark County and all of the equipment was broken up. Donahue testified further that DeWitt had told him at their first meeting that if the defendant were elected he could continue to operate his gambling place.

The record discloses further that numerous deputy sheriffs who served under the defendant were called as witnesses and testified that the defendant told them to stay away from the locality of the Red Brick Tavern, and also the Silver Dollar, another gambling place located in the southern part of Clark County. They testified that they received complaints about gambling, and when the defendant was informed of this he would tell them to "skip it," that he was "not running a Sunday School class" and that he was "not a reformer."

Helen Ellsworth was called as a witness and testified that she was a friend of Mr. Marshall, one of the owners of the Red Brick Tavern; that she helped him count out $960.00, which was placed in an envelope, which Marshall then put in his pocket. They then drove to Springfield in an automobile and blew the horn in front of the defendant's home. When he came out, Marshall attempted to hand him the envelope, which the defendant refused. The defendant then invited him to come into the house and after both had been in there for approximately five minutes, Marshall returned.

One of the errors assigned is that the Court erred in admission of evidence with reference to the operation of the Silver Dollar. Evidence was offered by the state which tended to show that the defendant knew of the gambling operations there, was told of numerous complaints made to his deputies and that he not only failed to act, but that he ordered his deputies to stay away from the place and not to be seen on the highway on which it was located. There was no positive evidence that a bribe had been received from the operation of the Silver Dollar, but the evidence was such that the inference could be drawn from it. This evidence was properly admitted under §13444-19 GC, which provides:

"In any criminal case where the defendant's motive, intent, the absence of mistake or accident on his part, or the defendant's scheme, plan or system in doing an act, is material, any like acts or other acts of the defendant which may tend to show his motive, intent, the absence of mistake or accident on his part, or the defendant's scheme, plan or system in doing the act in question, may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another or subsequent crime by the defendant."

Under this section any like acts or other acts of the defendant are admissible in any criminal case where the defendant's "motive, intent, the absence of mistake or accident on his part, or the defendant's scheme, plan or system" in doing an act, is material. Evidence was offered by the State from which the jury might find that a conspiracy existed between the defendant, Marshall and Donahue, the operators of the Red Brick Tavern, and DeWitt, the alleged go-between, to permit gambling in Clark County, in consideration of the payment of a bribe. The question of the defendant's motive in acting as he did is directly involved. Likewise, his intent to permit law violation is in issue. There is also the alleged scheme, or the planning between DeWitt, Marshall and Donahue as disclosed by the record. At the time this evidence was offered and also in the general charge, the Court clearly pointed out that it was admitted only for the purpose of showing the intent of the defendant, and was not to be considered as substantive proof of the offense charged in the indictment. We think the law in this State on this subject is clearly set forth in the case of **State v Davis, 90 Oh St 104**, where Wanamaker, J, says:

"The very nature and necessities of the case, the honor and integrity of public officials and public service, demand that the state of Ohio shall have the advantage of the most liberal construction of the rules of evidence in making its proof of guilt. The competency of other similar offenses to show guilty knowledge, corrupt intent, criminal plan, design or system upon the part of the defendant, is very fully considered in a recent case decided by this Court, **State of Ohio v Reineke, 89 Oh St 390**.

"It is a well-settled rule that where the crime involves a specific intent, such as forgery, obtaining money or property under false pretenses, and embezzlement, where a specific intent is made a part of the offense, that in such cases other and similar offenses not too remote may be proven to show the intent charged."

And continuing on **page 103**:

"As a rule bribery is one of the most difficult crimes to prove, because there are usually only two parties to the transaction, both of whom are either equally guilty or have such a common interest in concealing the crime that exposure of the wicked transaction rarely occurs. If the money is stolen from

the public treasury, or from the trust funds in possession of the officer, the time of accounting usually discloses the fact. But not so with bribery. The records are usually manipulated so that there is neither evidence nor suggestion of the corrupt or wicked act."

Again, the principles relative to showing intent, knowledge, etc., are announced in **Scott v State, 107 Oh St 476.** In this case the Court found that there was prima facie evidence of a conspiracy, between the defendant Scott, who was safety director for the city of Youngstown, and a federal officer by the name of Brown, the conspiracy being to violate the prohibition laws. The trial court admitted conversations between a police officer and federal officer Brown, but not in the presence of the defendant, which evidence tended to establish the unlawful sales of liquor at certain cafes operated by other alleged conspirators. At **page 480,** Allen, J., says:

"This evidence in regard to conversations with and transactions with Federal Officer Brown obviously was not admissible, unless there was some collusion, conspiracy, or working arrangement between Federal Officer Brown and the defendant.

"It was the contention of the state upon the trial that the defendant did have an arrangement with Federal Officer Brown, and that, as a result of such understanding, Brown permitted Scott to extend his favors to such bootleggers as Scott desired to protect. The state claimed that in fact Scott did extend protection to certain bootleggers, knowing that Brown, through the alleged understanding, would not interfere with the illegal operations. * * * "

"* * * It suffices to say that the court finds there was prima facie evidence of a conspiracy between Brown and Scott to protect bootleggers in the city of Youngstown, that the evidence complained of was relevant and was therefore rightly admitted."

The record discloses that the attitude of the defendant was the same towards the Silver Dollar as it was toward the Red Brick Tavern during the period covered in the indictment. We have here two notorious gambling establishments operated over a long period of time without any interference by the defendant. He is the Sheriff, the law enforcement officer of the county, and knows of this illegal operation. Although his deputies advise him of numerous complaints he does nothing about it. He instructs them to "skip it." He orders them to

stay away from the vicinity of both of these gambling places. The acts with reference to the Silver Dollar being similar to those with reference to the Red Brick Tavern, we are of the opinion that the evidence was properly admitted.

The defendant urges next that the Court erred'in the admission of the testimony of Donahue as to acts and conversations with DeWitt which were not had or made in his presence. The evidence was admitted upon the theory that they were all parties to a conspiracy to violate the gambling laws of the state, and that as an incident thereto the alleged bribery offense was committed. A conspiracy has been defined as a combination of two or more persons by some concert of action to accomplish some criminal or unlawful purpose, or some purpose not itself criminal or unlawful, by criminal or unlawful means. See **8 O. Jur., p. 41, Sec. 2** and cases cited thereunder.

After giving the most careful consideration to all the evidence in the record, we are of the opinion that a prima facie case was made of the existence of a conspiracy between Donahue, Marshall, DeWitt and the defendant to accomplish an unlawful purpose to wit: permit and protect gambling in Clark County, Ohio. Upon adequate proof that a conspiracy exists, and that an accused has entered into it, he is bound by the conduct of his confederates in the furtherance of their common unlawful purposes; the act of one of several conspirators in the furtherance of the conspiracy is the act of all. When persons have associated together for one common end, whatever one does with respect to it may be given in evidence against all of them. It is not necessary that the conspiracy be one to commit the identical offense charged in the indictment or even a similar one; it being enough that the offense charged in the indictment was one which might have been contemplated as the result of the conspiracy. See **8 O. Jur., p. 55, Sec. 14,** and cases cited.

The defendant has cited the case of **State of Ohio v Nevius, 77 Oh Ap 161,** but we do not believe that the facts are similar to the case at bar. Speaking on **p. 172,** Matthews, J., says:

"Justification for the ruling as to both the Parisi and Thomas statements is sought to be based on the theory that the evidence shows Parisi, Thomas and appellant were co-conspirators, and that, therefore, the declarations of each in pursuance of the common design were admissible against the other as substantive evidence. It should be observed here that if the evidence showed they and appellant were co-conspirators, no other foundation for the admissibility of their statements in pursuance of the common design would be necessary.

And what they said as co-conspirators would be substantive evidence of the facts.

"Now, is there any evidence that they and appellant were participants in a common conspiracy in pursuance of which Thomas made this statement to Dorothy Miller? * * * There is no evidence that the appellant as a co-conspirator of Parisi, Schear and Thomas engaged in the operation of the Silver Dollar Club or any other gambling enterprise."

Since the evidence in this case did not support the theory that the defendant was one of the conspirators, we do not think that the facts are identical with the case at bar, as we find that the evidence would support the conclusion that a conspiracy did exist and that the defendant was one of the conspirators.

Another error assigned is the manner in which the jury was drawn. When the panel selected from the wheel was exhausted counsel for the state moved for the selection of talesmen in accordance with 11419-48 GC, which was accordingly done, and cannot be error.

Counsel for the defendant had moved the Court to draw the additional names from the wheel under the plenary power of the Jury Code. This motion was overruled and then the defendant moved that the Coroner summon the additional jurors, claiming the Sheriff was interested in the case. We do not find that the record supports this conclusion. The rulings on these motions were within the sound discretion of the Court, and we find that there was no abuse of the same.

We find no merit in the other assigned errors, and the judgment is affirmed.

HORNBECK, PJ, and WISEMAN, J, concur.