THE STATE OF OHIO, APPELLEE, *v.* STUKEY, APPELLANT.

[Cite as State v. Stukey (1973), 40 Ohio App. 2d 512.]

513

(No. 1137—Decided December 1, 1973.)

*Mr. John J. Malik, Jr.*, prosecuting attorney, and *Mr. Charles F. Knapp*, for appellee.
*Mr. William H. Blackford*, for appellant.

LYNCH, P. J. Defendant, appellant herein, is appealing his conviction for possession of marijuana for sale in violation of R. C. 3719.44(B).

Pursuant to a search warrant, police officers of the city of Martins Ferry and the Belmont County sheriff's office searched a two story frame dwelling house outside of Martins Ferry on October 16, 1972. Two Air Force duffle bags containing approximately seventy pounds of marijuana were found behind a large overstuffed chair in the living room of the second floor apartment. The name of Lynn A. Stukey and his Air Force serial number was on one of the Air Force duffle bags. The street value of the marijuana taken from these premises was estimated by the chief of police of Martins Ferry as $35,000.

The evidence established that Harold Richardson, who lived across the street, owned the property that was searched. At the time that this property was searched, his son, Ronald Richardson, occupied the first floor. The second floor apartment had been occupied by Harold's daughter, Patricia Richardson, until September 1, 1972, when she had moved to Weirton, West Virginia. On October 16, 1972, when this property was searched, no one was living in the second floor apartment. It was unoccupied. Defendant did not live in the house that was searched.

Patricia Richardson testified that when she moved

out of the subject second floor apartment the duffle bags were not in her apartment; that defendant was only in her apartment once while she was there; that she saw defendant with a baggie of marijuana, and that he offered her a marijuana cigarette, which she smoked.

Next door to the building that was searched, there was a trailer that Harold Richardson also owned and which was occupied by Harold's daughter, Stephanie Kay Richardson, and her two minor children.

Defendant was in the United States Air Force from September 5, 1967, until he was discharged in February 1972. From June 1972 until arrested on October 16, 1972, defendant was living in the trailer with Kay Richardson, but they were not married. Defendant admitted that the duffle bag found as a result of the search of the second floor apartment had belonged to him, but stated that the last time he saw it was when he brought it from his family home to the Richardson property in August or September. It was laying on the floor of the back seat of his car when he last saw it. He denied knowing anything about how his duffle bag with the marijuana got into the the second floor apartment. Defendant admitted that he had smoked marijuana, but denied that he ever sold any.

Defendant testified that he was only in the second floor apartment once and that was when Patricia Richardson was living there. Defendant had been in Ronald Richardson's apartment ten or twelve times from June until October. The last time was a couple of weeks before October 16. He admitted that he had smoked marijuana in Ronald Richardson's apartment.

When the police officers arrived at the subject premises on October 16, defendant and Ronald Richardson were in Kay Richardson's trailer. Defendant and Ronald Richardson walked towards the front of the house where the police officers were. Ronald Richardson was given a copy of the search warrant, which was read by both Ronald Richardson and defendant. Defendant did not enter the subject premises while it was being searched.

Defendant's first assignment of error is that the fail-

ure to state underlying circumstances to the issuing judge of the search warrant indicating probable cause warranting a search is a constitutional error.

The affidavit for the search warrant was signed by William E. Williams, who is the felony investigating and coordinating officer of the Belmont County prosecutor's office. The facts upon which he based his belief that there was marijuana illegally concealed on the property to be searched was information received from Sgt. Ronald Dixon of the Wheeling, West Virginia, police department —"Sgt. Dixon being a reliable informant having provided in the past, information leading to the arrest and conviction of two subjects for possession of same, & confiscation of drugs and marijuana."

Prior to the trial of this case, defendant filed a motion to suppress the evidence secured pursuant to the search warrant issued in this case for the reason that the affidavit was defective and violated defendant's rights secured to him by the Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution. After a hearing, the trial court overruled this motion.

In *State* v. *Haynes*, 25 Ohio St. 2d 264, the court states, on page 266, the following:

"It is now well established that the validity of a state search must be determined by federal standards. Those standards are set forth basically in *Aguilar* v. *Texas* (1964), 378 U. S. 108; *United States* v. *Ventresca* (1965), 380 U. S. 102; *Spinelli* v. *United States* (1969), 393 U. S. 410.

"Those cases, taken together, require that the issuing magistrate be given sufficient information to allow him, as a neutral and detached officer, to make an independent judgment that probable cause exists to warrant the belief that the contraband is on the premises sought to be searched. Where the affidavit upon which the warrant is to be issued is based upon hearsay information obtained from an informant, such affidavit, if that is all that is before the magistrate, must show two things: First, the underlying circumstances which

will enable the magistrate to independently judge the validity of the informant's conclusion that the narcotics were on the premises; second, sufficient information to show that the informant was credible or his information was reliable. *Ventresca, supra,* points out, however, that in determining such matters the courts should not be hypertechnical, but should use common sense."

In *Jones* v. *United States,* 362 U. S. 257, the court, on page 261, states as follows:

"In order to qualify as a 'person aggrieved by an unlawful search and seizure' one must have been a victim of a search or seizure, one against whom the search was directed, as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at someone else. Rule 41(e) applies the general principle that a party will not be heard to claim a constitutional protection unless he 'belongs to the class for whose sake the constitutional protection is given.' *Hatch* v. *Reardon,* 204 U. S. 152, 160. The restrictions upon searches and seizures were obviously designed for protection against official invasion of privacy and the security of property. They are not exclusionary provisions against the admission of kinds of evidence deemed inherently unreliable or prejudicial. The exclusion in federal trials of evidence otherwise competent but gathered by federal officials in violation of the Fourth Amendment is a means for making effective the protection of privacy.

"Ordinarily, then, it is entirely proper to require of one who seeks to challenge the legality of a search as the basis for suppressing relevant evidence that he allege, and if the allegation be disputed that he establish, that he himself was the victim of an invasion of privacy."

*Jones* v. *United States, supra,* was followed in *Mancusi* v. *DeForte,* 392 U. S. 364.

The affidavit for the search warrant was typed by Lt. William Patche of the Martins Ferry police department and was signed by William E. Williams. The search warrant was issued by County Court Judge Paul Ochsenbein. None of these three persons are attorneys. Upon a review

of the record, we feel that the parties responsible for this search warrant made a conscious effort to comply with the legal requirements of a search warrant. The search warrant indicates that a photograph of the building to be searched was attached, and we find that this search warrant complies with the statutory requirements as to describing the house to be searched. We further find that the affidavit states sufficient facts to establish that Ronald Dixon was a credible and reliable informant.

However, we find that the search warrant is defective in that it does not state sufficient facts for Judge Ochsenbein to make an independent judgment that probable cause existed that marijuana was illegally concealed on the premises sought to be searched. This defect was not satisfied by showing Judge Ochsenbein the items confiscated as a result of the search because such information was obtained after the search warrant was issued, when it should have been at hand prior to the issuance of the search warrant.

At the hearing on the motion to suppress this evidence, Mr. Williams testified that he had probable cause of his own knowledge to sign the search warrant and that he related various circumstances to Judge Ochsenbein. When defense counsel attempted to question Mr. Williams as to the information that he related to Judge Ochsenbein as to probable cause that marijuana was illegally concealed on the premises sought to be searched, the repeated objections of prosecution counsel were sustained by the trial court both at the hearing on the motion to suppress and at the trial of this case. Thus, if Mr. Williams had related sufficient information to Judge Ochsenbein to enable him to make an independent judgment that probable cause existed that marijuana was illegally concealed on the premises sought to be searched, such information is not a part of this record because of the objections of the prosecution counsel to any questions by the defense counsel on this subject.

The next question is whether defendant has proper standing to challenge this search warrant even if it is defective.

Defendant neither owned, rented, occupied or was pres-

ent in the premises that were searched. His duffle bags containing the marijuana were found in the second floor apartment, and he testified that he had only been in the second floor apartment once which was at least two months earlier. At the time of the search of the second floor apartment, it was vacant and unoccupied. We hold that defendant does not belong to the class for whose sake the constitutional protection against unreasonable searches and seizures is given, and that he has no standing to make a motion to suppress the evidence obtained as a result of this search.

Therefore, we overrule defendant's first assignment of error.

Defendant's second assignment of error is that the omission of his name on the search warrant rendered the search warrant a general one invalid for uncertainty.

The search warrant named Harold Robinson as the owner of the property and James Bethal as the person who concealed the marijuana in question. The evidence indicated that James Bethel, at the time the search warrant was issued, was in custody, under arrest, in Ohio County, West Virginia, for possession of marijuana, which was obtained from the property that was the subject of this search warrant.

We conclude that both Harold Robinson and James Bethel were known persons and that the search warrant was specific enough to comply with R. C. 2933.23 to the extent of naming a person owning the article to be seized. We hold that defendant's second assignment of error has no merit.

Defendant's third assignment of error is that the selection and summons of the last juror was contrary to statute.

The record reveals that the panel of jurors was exhausted before the last juror was selected, and three additional persons were called for jury duty, of which one was finally selected as the last juror. The last three names were not drawn from the jury wheel. Defendant's objection to this procedure was overruled by the trial court.

When defense counsel asked one of the prospective

jurors how she was selected, the prosecution's objection was sustained by the trial court, with the following comment: "It is a matter of record." However, there is nothing in the record that indicates how these last three prospective jurors were selected.

Over objection by the prosecution, the trial court permitted one of the prospective jurors to testify that she received a telephone call that morning, but when defense counsel asked who called this prospective juror, the objection of the prosecution counsel was sustained.

After the last juror was selected from the three additional persons, the trial court called counsel for both parties to the bench where both the counsel for the state and counsel for the defendant indicated they were satisfied with the jury. The jury was then sworn and the trial began.

R. C. 2313.38 provides that when the panel of jurors is exhausted, the sheriff shall summon talesmen until the deficiency is made up.

R. C. 2313.39 provides as follows:

"When it is necessary to summon talesmen, the court, on the motion of either party, shall select them, and immediately issue a venire for as many persons having the qualifications of a juror as, in the opinion of the court, are necessary, which persons shall appear forthwith, or at such times as fixed by the court. No person known to be in or about the courthouse shall be selected without the consent of both parties."

47 American Jurisprudence 2d 627, Jury, Section 2, defines "talesmen" as follows:

" 'Talesmen' are jurors returned from bystanders or the body of the county to complete a panel when because of challenge or other cause, there is not a petit jury to determine a civil or criminal case."

Under the circumstances of this case, the trial court was not required to have the names of the additional jurors drawn from the jury wheel. *State* v. *Young*, 48 Ohio Law Abs. 22.

In the absence of a clear showing to the contrary, there is a presumption that the proceeding of the court, in order-

ing the summoning of talesmen, is regular and valid. *Bobbitt* v. *Maher Beverage Co.*, 152 Ohio St. 246 at page 249.

Under the circumstances of this case, the proper time to object to the qualifications of the last juror was at the impaneling of the jury, and it must be taken as waived unless the party is able to show to the court that with the exercise of reasonable diligence he could not have taken the exception at the proper time. *Cottman* v. *Federman Co.*, 71 Ohio App. 89, at page 99; 32 Ohio Jurisprudence 2d 642-643. Jury, Section 53.

Where the record shows that the party complaining had a fair trial by an impartial jury, the provisions of R. C. 2313.39 may be waived by conduct of counsel. *State, ex rel. LeGere.* v. *Carros*, 80 Ohio App. 65.

The record does not contain anything that would indicate that the selection and summons of the last juror was contrary to statute. However, we feel that defendant was entitled to know how the three prospective jurors were selected and particularly who called them, and that the trial judge committed error in preventing defense counsel from obtaining such information. We further feel that defense counsel waived this error when he indicated that he was satisfied with the jury and proceeded with the trial, and that defendant had a fair trial with an impartial jury.

Defendant's third assignment of error is overrued.

*Judgment affirmed.*

Donofrio and O'Neill, JJ., concur.

### Motion For Reconsideration

Lynch, P. J. Defendant filed a motion for reconsideration. He cites *Katz* v. *United States,* 389 U. S. 347, but we hold that the *Katz* case is not applicable to the instant case.

The prosecuting attorney did not raise the question of the standing of defendant to challenge this search warrant, either in the trial of this case or during this appeal. This court raised this issue for the first time at the hear-

ing on this appeal. The prosecuting attorney contended erroneously throughout the trial and appeal of this case that the search warrant was valid. Defendant contends that the prosecution had the burden of raising the question of the standing of defendant to challenge this search warrant during the trial of this case and that this question cannot be raised for the first time on appeal.

It is well settled law in Ohio that all questions which the parties could waive were to be deemed to have been waived if such questions were not presented at an appropriate time in an appropriate manner in the trial court. The law imposes upon every litigant the duty of vigilance in the trial of a case, and where the trial court commits an error to his prejudice, he is required then and there to call the attention of the court to that error. A just regard to the fair administration of justice requires that an opportunity should be given the court to avoid the commission of error upon trial, and that when an error is supposed to have been committed, there should be an opportunity to correct it at once, before it has had any prejudicial consequences. *State* v. *Loucks*, 28 Ohio App. 2d 77, at pages 78-79, 82; *Adams* v. *State*, 25 Ohio St. 584; 3 Ohio Jurisprudence 2d 38, Appellate Review, Section 185, and page 677, Section 718.

The syllabus of *Republic Steel Corp.* v. *Board of Revision of Cuyahoga County*. 175 Ohio St. 179, is as follows:

"Issues not raised in the lower court and not there tried and which are completely inconsistent with and contrary to the theory upon which appellants proceeded below cannot be raised for the first time on review."

In the instant case, on the question of the standing of the defendant to challenge the search warrant, the issue is whether the trial court committed error in overruling defendant's motion to suppress the evidence secured pursuant to a search warrant because the affidavit was defective rather than the failure of the prosecution to raise the question of standing of defendant to challenge the search warrant. The burden is on the defendant to show that the trial court committed error in overruling defend-

ant's motion to suppress the evidence secured pursuant to the search warrant. 3 Ohio Jurisprudence 2d 670-671, Appellate Review, Section 716.

This burden of defendant is not satisfied by establishing that the prosecuting attorney did not raise the question of the standing of the defendant to challenge the search warrant during the trial of this case because only the trial judge was capable of making any error on this issue. Our recollection of the record of this case is that the trial judge did not state his reasons for overruling this motion.

3 Ohio Jurisprudence 2d 669, Appellate Review, Section 715, states as follows:

"* * * unless the record shows something to the contrary, it will be presumed that the lower court acted wholly within the law, that the decree or judgment was made upon proper grounds, that the court below applied the law correctly, and that its action was justified."

However, if the trial judge had stated that he was overruling this motion because of the erroneous belief that the search warrant was valid, he still would not have committed error because the facts of this case established that defendant did not have proper standing to challenge this search warrant. The test of whether error was committed by the trial judge is the result of his ruling rather than the reasons given for such ruling.

The motion of defendant for reconsideration is overruled.

*Motion overruled*

Donofrio and O'Neill, JJ., concur.